IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

No. 16-0543

**FILED**
**May 9, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Petitioner

v.

STEWARD BUTLER,
Defendant Below, Respondent

Appeal from the Circuit Court of Cabell County
Honorable Paul T. Farrell, Judge
Criminal Action No. 15-F-242

AFFIRMED AND REMANDED

Submitted: April 25, 2017
Filed: May 9, 2017

Lauren E. Plymale, Esq.
Assistant Prosecuting Attorney
Cabell County
Huntington, West Virginia
Counsel for Petitioner

Raymond A. Nolan, Esq.
The Nolan Law Firm
Lavalette, West Virginia
Counsel for Respondent

Gregory R. Nevins, *Pro Hac Vice*
Atlanta, Georgia
and
Stephen G. Skinner, Esq.
Skinner Law Firm
Charles Town, West Virginia
Counsel for Amicus Curiae - Lambda
Legal Defense and Education Fund, Inc.

Patrick Morrisey, Esq.
Attorney General
Elbert Lin, Esq.
Solicitor General
Julie Marie Blake, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Amicus Curiae -
West Virginia Attorney General

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

JUSTICES DAVIS and WORKMAN dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1.  "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

2.  "The Legislature has power to create and define crimes and fix their punishment[.]" Syl. Pt. 2, in part, *State v. Woodward*, 68 W.Va. 66, 69 S.E. 385 (1910).

3.  "'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syl. Pt. 2, *King v. West Virginia's Choice, Inc.*, 234 W.Va. 440, 766 S.E.2d 387 (2014).

4.  "Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

5.  "This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of

legislation." Syl. Pt. 2, in part, *Huffman v. Goals Coal Co.,* 223 W.Va. 724, 679 S.E.2d 323 (2009).

6. "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, in part, *Brooke B. v. Ray*, 230 W.Va. 355, 738 S.E.2d 21 (2013).

7. "The action of this court, in refusing to docket for review a case certified under Code, 58-5-2, is not to be construed as a final adjudication of the questions presented on the certification, or as limiting the court in its decision upon the record presented on final hearing." Syl. Pt. 1, *Hastings v. Finney*, 119 W.Va. 301, 193 S.E. 444 (1937).

8. This Court's exercise of discretion under Rule 17(a)(6) of the West Virginia Rules of Appellate Procedure in refusing to docket a certified question presented to this Court under West Virginia Code § 58-5-2 (2012) is neither an express nor an implicit ruling on the merits of the legal issue presented therein, and the circuit court may thereafter take such action and make such rulings in the matter as it deems appropriate.

LOUGHRY, Chief Justice:

The petitioner (plaintiff below), State of West Virginia, appeals the circuit court's order entered May 13, 2016, through which it dismissed two counts of a four-count indictment returned against the respondent (defendant below), Steward Butler. The two dismissed counts charged the defendant with criminal civil rights violations under West Virginia Code § 61-6-21(b) (2014). The State argues that the circuit court erred when it dismissed Counts I and III based on its erroneous determination that the word "sex" in West Virginia Code § 61-6-21(b) was plain and unambiguous and could not be expanded to include "sexual orientation." Upon our careful review of the parties' briefs, the arguments of counsel, the appendix record submitted, and the applicable law, we affirm the circuit court's ruling and remand this action to the circuit court for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

The State alleges that during the early morning hours of April 5, 2015, the defendant was riding in a car with friends in Huntington, West Virginia. While the car was sitting at a stoplight, the defendant observed two men, Casey Williams and Zackery Johnson, exchange a kiss on the sidewalk. The defendant allegedly voiced homophobic slurs toward

Williams and Johnson, exited the vehicle,[1] and struck both Williams and Johnson in the face with his fist, knocking Williams to the ground.

On May 21, 2015, a Cabell County Grand Jury returned an indictment against the defendant, charging him in Counts II and IV with battery in violation of West Virginia Code § 61-2-9(c) (2014) and with violations of an individual's civil rights under West Virginia Code § 61-6-21(b)[2] in Counts I and III. The defendant states that after the indictment was returned against him, he expressed his intent to challenge the applicability of West Virginia Code § 61-6-21(b) to the acts for which he was indicted.

---

[1]One of the victims began to video the incident using his cell phone. That video recording, as well as the statements taken from the defendant's companions, were used to identify the defendant as the alleged perpetrator.

[2]West Virginia Code § 61-6-21(b) provides, in full, as follows:

> If any person does by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of the State of West Virginia or by the Constitution or laws of the United States, because of such other person's race, color, religion, ancestry, national origin, political affiliation or sex, he or she shall be guilty of a felony, and, upon conviction, shall be fined not more than five thousand dollars or imprisoned not more than ten years, or both.

The parties represent that during a status conference held on September 29, 2015, the circuit court directed the parties to draft a certified question to address the issue of whether West Virginia Code § 61-6-21(b) includes protections based on "sexual orientation." The parties did so and, by order entered December 16, 2015, the circuit court submitted the following certified question to this Court: "Whether the provision of *West Virginia Code* §61-6-21 embodies a protection of an individual's civil rights if the violative act is based solely upon said individual's sexual orientation?" By order entered February 9, 2016, this Court refused to docket the certified question.[3]

Following a status conference held on February 29, 2016, the circuit court entered an order on March 4, 2016, directing the parties to submit briefs addressing the applicability of West Virginia Code § 61-6-21(b). Following this briefing, the circuit court entered an order on May 13, 2016, in which it stated that it could not "reasonably hold that West Virginia Code § 61-6-21(b) is ambiguous"[;] that a review of similar laws from other states demonstrated that "there are two distinct categories of potential discrimination: discrimination based on sex and discrimination based on sexual orientation"[;] that the "West Virginia legislature could have included sexual orientation as an area of protection . . . [as] [n]umerous other states have done"[;] that it was "bound to apply the law as it stands"[;] and

---

[3]Justices Davis and Workman would have accepted the certified question for the Court's consideration and decision.

that it "cannot expand the word 'sex' to include 'sexual orientation' within West Virginia Code § 61-6-21(b)." In this same order, the circuit court ruled that Counts II and IV charging the defendant with battery "shall remain[,]" and it dismissed Counts I and III charging the defendant with violating West Virginia Code § 61-6-21(b). The State appeals these rulings.

## II. Standard of Review

The circuit court dismissed Counts I and III of the indictment after concluding that the word "sex" in West Virginia Code § 61-6-21(b) was plain and unambiguous and could not be expanded to include "sexual orientation." The circuit court ruled that the State could not properly bring such charges against the defendant under the current law of this state. These findings meet the criteria under West Virginia Code § 58-5-30 (2012), which permits the State to appeal the dismissal of an indictment that "is held bad or insufficient by the judgment of a circuit court." *Id.*

Through this appeal, we are asked to examine the meaning of the word "sex" as used in West Virginia Code § 61-6-21(b). As we have previously held, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With this plenary standard in mind, we proceed to determine whether the circuit court erred in dismissing Counts I and III of the

indictment on the basis that the word "sex" in West Virginia Code § 61-6-21(b) is unambiguous and does not include "sexual orientation."

### III. Discussion

The State asserts that the circuit court erred by ruling that West Virginia Code § 61-6-21(b) does not provide protection for an individual's civil rights where the violative act is based upon the individual's sexual orientation and by ordering Counts I and III of the indictment dismissed. The State also challenges the propriety of the circuit court ruling upon the legal issue that had been raised in the circuit court's certified question after this Court refused to docket the same. We address these issues, in turn, below.[4]

### A. West Virginia Code § 61-6-21(b)

The State asserts that the word "sex" in West Virginia Code § 61-6-21(b)[5] is ambiguous and should be interpreted to include "sexual orientation." Arguing that the legislative history for West Virginia Code § 61-6-21 does not reflect whether sexual

---

[4]An amicus brief was submitted by the West Virginia Attorney General that substantively supports the defendant's position in this matter. A separate amicus brief was submitted by the Lambda Legal Defense and Education Fund, Inc. that supports the State's, *i.e.,* the prosecution's position.

[5]*See supra* note 2.

orientation was intended to be a protected status under the statute,[6] the State contends the word "sex" could nonetheless be reasonably construed to encompass multiple meanings in the context in which the word is used. The State recites the definitions of the word "sex" in Black's Law Dictionary and Merriam-Webster Dictionary in support of its argument that West Virginia Code § 61-6-21 would provide protection based on sexually motivated phenomena or behavior, including sexual orientation. Asserting that Title VII[7] precedent effectively prohibits discrimination based on sexual orientation when the discriminatory behavior is determined to be "because of sex,"[8] the State urges this Court to apply Title VII precedent here.

---

[6]Chapter 40 of the Acts of the Legislature of West Virginia, Regular Session, 1987, reflects that the Committee Substitute for Senate Bill 301 was an act "to amend article six, chapter sixty-one of the code of West Virginia . . . by adding thereto a new section . . . prohibiting violations of an individual's civil rights by reason of that individual's race, color religion, ancestry, national origin, political affiliation or sex[.]"

[7]Title VII of the federal Civil Rights Act of 1964 prohibits employment discrimination based on an individual's "race, color, religion, sex and national origin." *See* 42 U.S.C. §§ 2000e-2.

[8]The State briefly argues that even if sexual orientation is not covered under West Virginia Code § 61-6-21(b), it should still be allowed to prosecute on Counts I and III on the basis that the crimes would not have occurred if one of the victims had been female, *i.e.*, the State contends that the defendant did commit the crimes because of the victims' sex. Although it is unclear from the appendix record whether the State presented this argument below, we find it to be unavailing as it alters not only the sex of one of the victims–from male to female–but it also requires the hypothetical female to be heterosexual. In other words, the argument invokes both the sex and sexual orientation of the alleged victim. To the extent this argument is tied to the State's reliance upon the "because of sex" analyses employed under remedial discrimination statutes such as Title VII, such analysis is inapplicable. *See infra* note 11.

6

Contrary to the State's position, the defendant argues that West Virginia Code § 61-6-21(b) clearly and unambiguously includes "sex," but not "sexual orientation." Citing *State v. Sulick*, 232 W.Va. 717, 753 S.E.2d 875 (2012), wherein this Court held that the West Virginia Code § 61-6-21 was not unconstitutionally vague,[9] the defendant asserts that the absence of the words "sexual orientation" in § 61-6-21(b) reflects that the Legislature did not intend for the statute to include sexual orientation. Arguing that words are to be given their common usage, the defendant argues that this Court's precedent demonstrates that courts are not free to read into a statute language that is not there but should apply statutes as they are written. The defendant also quotes dictionary definitions for the words "sex" and "sexual orientation" in support of his argument that these terms have very different meanings. Maintaining these terms are treated as separate and distinct categories, the defendant highlights the fact some states have hate crime statutes that protect and/or prohibit conduct based on "sexual orientation," while other states list both "sex" and "sexual orientation."

We begin our analysis by recognizing that more than a century ago, this Court held that "[t]he Legislature has power to create and define crimes and fix their punishment[.]" Syl. Pt. 2, in part, *State v. Woodward*, 68 W.Va. 66, 69 S.E. 385 (1910). Since then,

---

[9]*Sulick*, 232 W.Va. at 719, 753 S.E.2d at 876, syl. pt. 7.

> [w]e have consistently held that subject to certain constitutional limitations there exists in the Legislature the broad right to define crimes and their punishment. *State ex rel. Cogar v. Kidd*, W.Va., 234 S.E.2d 899 (1977); *State ex rel. Heck's v. Gates*, 149 W.Va. 421, 141 S.E.2d 369 (1965); *State v. Painter*, 135 W.Va. 106, 63 S.E.2d 86 (1950).

*State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 35, 239 S.E.2d 660, 663 (1977).

In 1987, our Legislature exercised its right to define crimes when it enacted West Virginia Code § 61-6-21(b) through which it became a felony to violate a person's civil rights by threat, intimidation and/or injury to another person or another person's property because of specifically enumerated characteristics, including the victim's "sex." W.Va. Code § 61-6-21(b).[10] In determining what is meant by the word "sex," we are mindful that "'[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syl. Pt. 2, *King v. West Virginia's Choice, Inc.*, 234 W.Va. 440, 766 S.E.2d 387 (2014); *see also* Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. Pt. 2, *Eggleton v. State Workmen's Comp. Comm'r*, 158 W.Va. 973, 214 S.E.2d 864 (1975) ("Where a statute is plain and unambiguous, a court has a duty to apply and not to construe its

---

[10]*See supra* note 2.

8

provisions."). Moreover, "[t]hat the parties disagree as to the meaning . . . of [a statutory] provision does not of itself render [the] provision ambiguous[.]" *Estate of Resseger v. Battle*, 152 W.Va. 216, 220, 161 S.E.2d 257, 260 (1968).

The word "sex" in West Virginia Code § 61-6-21(b) is undefined. We have previously addressed other undefined terms in this statute. In *Sulick*, the defendant asserted that the undefined words "force or threat of force" contained in West Virginia Code § 61-6-21(b) rendered the statute unconstitutionally vague. Relying upon our precedent, such as that discussed above, we ascribed ordinary meaning to the words "force" and "threat" and concluded that the language was "clear in prohibiting the use of either physical means or a communicated intent to inflict harm or loss on another or on another person's property." *Sulick*, 232 W.Va. at 725, 753 S.E.2d at 883.

As we explained in *Sulick,* our precedent provides that "[u]ndefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984); *see also* Syl. Pt. 4, in part, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning[.]"). Affording the undefined term "sex" its common and ordinary meaning, and for the reasons set forth below,

9

we find the word to be clear and unambiguous and to have a very different meaning and import than the term "sexual orientation."[11]

In Black's Law Dictionary, the word "sex" is defined as: "1. The sum of the peculiarities of structure and function that distinguish a male from a female organism; gender. 2. Sexual intercourse. 3. Sexual relations[.]" Black's Law Dictionary (10th ed. 2014). Although the State urges this Court to also include "sexual orientation" in that definition,[12] "sexual orientation" has a distinctively different definition, as follows: "A

---

[11]The parties and the amici devote a substantial portion of their respective briefs to arguments involving a legal analyses employed in West Virginia Human Rights Act [W.Va. Code § § 5-11-1 to -20] and Title VII cases. Because we have found the word "sex" in West Virginia Code § 61-6-21(b) to be unambiguous, such interpretive analysis is inapplicable; rather, "its plain meaning is to be accepted and applied without resort to interpretation." *Crockett,* 153 W.Va. at 715, 172 S.E.2d at 385, syl. pt. 2. Further, even if we were to find the term "sex" is ambiguous, the "rule of lenity" would require us to strictly construe the statute against the State and in favor of the defendant, thereby commanding a similar outcome. *See* Syl. Pt. 5, *State ex rel. Morgan v. Trent*, 195 W.Va. 257, 465 S.E.2d 257 (1995) ("In construing an ambiguous criminal statute, the rule of lenity applies which requires that penal statutes must be strictly construed against the State and in favor of the defendant."). As we explained in *Morgan,* the "'[t]he rule of lenity serves to ensure . . . that there is fair warning of the boundaries of criminal conduct[.]'" *Id.* at 262, 465 S.E.2d at 262 (citation omitted).

[12]As indicated above, the State contends the word "sex" in West Virginia Code § 61-6-21(b) could be "construed to encompass multiple meanings," including sexual orientation. Such argument fails. First, unambiguous statutes are applied, not construed. *Eggleton*, 158 W.Va. at 974, 214 S.E.2d at 865, syl. pt. 2 ("Where a statute is plain and unambiguous, a court has a duty to apply and not to construe its provisions."). Second, the State's "multiple meanings" argument could run afoul of "the fundamental principle that a statute creating a crime must be so certain and definite that a person committing an act which it forbids can tell, when he does so, that he has violated the law." *State ex rel. Heck's Inc. v. Gates,* 149

(continued...)

10

person's predisposition or inclination toward sexual activity or behavior with other males or females; heterosexuality, homosexuality, or bisexuality." *Id.* The New Oxford American Dictionary ascribes similar meanings, defining "sex" as "either of the two main categories (male and female) into which humans and many other living things are divided on the basis of their reproductive functions]" and "sexual intercourse," and defining "sexual orientation" as "a person's sexual identity in relation to the gender to which they are attracted; the fact of being heterosexual, homosexual, or bisexual." New Oxford American Dictionary (3d ed. 2010). Likewise, Webster's New World College Dictionary defines "sex" as either "male or female," "intercourse," and "genitalia," whereas "sexual orientation" is defined as "a person's sexuality . . . with respect to his or her sexual desire; heterosexuality, homosexuality, bisexuality, etc." Webster's New World College Dictionary (5th ed. 2016). These common definitions manifest that the words "sex" and "sexual orientation" have clearly distinct meanings and import. This distinction is reflected in their usage in the federal hate crime law, as well as similar laws enacted in other states.[13]

---

[12](...continued)
W.Va. 421, 432, 141 S.E.2d 369, 377-78 (1965).

[13]An internet search reveals that various organizations also consider sex and sexual orientation to be distinct categories in hate crimes laws. For example, the Movement Advancement Project, a self-described "independent think tank that provides rigorous research, insight and analysis that help speed equality for lesbian, gay, bisexual and transgender (LGBT) people," lists sixteen states, including West Virginia, as having hate crime statutes that do not cover sexual orientation or gender identity. *See* http://www.lgbtmap.org/equality-maps/hate_crime_laws (last visited May 10, 2017). Similarly, the Anti-Defamation League describes West Virginia as having a hate crime
(continued...)

Federal law provides for the prosecution of persons who

> willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived religion, national origin, gender, *sexual orientation*, gender identity, or disability of any person[.]

18 U.S.C. § 249(2) (emphasis added). The vast majority of states have enacted hate crime laws.[14] Some states, like West Virginia, have created distinct crimes; other states provide for sentencing enhancements; and some states provide for both. Whether a separate crime, a sentencing enhancement, or both, West Virginia and five other states have statutes that list either "sex" or "gender";[15] twenty states list either "sex" or "gender" in addition to listing "sexual orientation";[16] and six states list only "sexual orientation."[17] Certain states list

---

[13](...continued) statute that does not include sexual orientation (https://www.adl.org/sites/default/files/documents/assets/pdf/combating-hate/ADL-updated-2016-Excel-State-Hate-Crime-Statutes.pdf (last visited May 10, 2017)), as does the National Gay and Lesbian Task Force (http://www.thetaskforce.org/static_html/downloads/reports/issue_maps/hate_crimes_06_13_color.pdf (last visited May 10, 2017)).

[14]Arkansas, Georgia, Indiana, South Carolina and Wyoming do not have hate crimes laws.

[15]*See* Alaska Stat. § 12.55.155(c)(22) ("sex"); Mich. Comp. Laws § 750.147b(1) ("gender"); Miss. Code §§ 99-19-301, 305(3), -307(a) ("gender"); N.D. Cent. Code § 12.1-14-04 ("sex"); Wyo. Stat. §6-9-102 ("sex").

[16]*See* Ariz. Rev. Stat. §§ 41-1750(A)(3), 13-701(D)(15); Cal. Penal Code §§ 422.55; 720 Ill. Comp. Stat. 5/12-7.1; Iowa Code §§ 729a.1, a.2; La. Rev. Stat. § 14:107.2; Md. Code, Crim. Law §§ 10-304, -305; Me. Rev. Stat. tit. 17-A, §1151; Minn. Stat. §609.2231(4); Mo. Rev. Stat. §557.035; Neb. Rev. Stat. §§ 28-111 to -113; N.H. Rev. Stat. § 651:6(1)(f);

(continued...)

"sexual orientation" and "gender expression" and/or "gender identity"[18] in their hate crime statutes. Other states do not include any of these terms in their hate crime statutes. This nationwide review of hate crime laws indisputably demonstrates that "sex" and "sexual orientation" are being treated as distinct categories. Further, the parties do not cite, nor has our research revealed, any reported decisions where the term "sex" was found to either include or exclude "sexual orientation" in those states whose hate crimes law lists "sex" only.[19]

Having determined that the word "sex" in West Virginia Code § 61-6-21(b) is unambiguous and clearly imparts being male or female, and does not include "sexual orientation," we further find that our determination is supported by the Legislature's repeated rejection of any attempt to add those terms to the statute in the thirty years since it first

---

[16](...continued)
N.J. Stat. § 2c:16-1; N.M. Stat. §§ 31-18B-2, -3; N.Y. Penal Law § 485-05; R.I. Gen. Laws § 12-19-38; Tenn. Code § 40-35-114(17); Tex. Penal Code § 12.47, Tex. Code Crim. Proc. Art. 42.014; Vt. Stat. tit. 13, § 1455; Wash. Rev. Code § 9A.36.080; *see also* D.C. Code §§ 22-3701, -3702, -3704.

[17]*See* Colo. Rev. Stat. § 18-9-121; Fla. Stat. § 775.085; Kan. St. § 21-6815(c)(2)(C); Ky. Rev. Stat. § 532.031; Or. Rev. Stat. § 166.155; Wis. Stat. § 939.645.

[18]*See* Conn. Gen. Stat. §§ 53a-181j; Del. Code tit. 11, § 1304; Haw. Rev. Stat. §§ 706-662, 846-51; Mass. Gen. Laws ch. 265, § 39; Nev. Rev. Stat. § 4l.690.

[19]Our research also failed to reveal any reported decision where a court found the term "gender" to include "sexual orientation" in those three states with hate crime laws that list "gender" but not "sexual orientation." *See supra* note 15.

13

enacted the statute in 1987. As the defendant asserts, the Legislature's repeated refusal to amend § 61-6 -21 to include "sexual orientation" is undoubtedly indicative of its intent not to include "sexual orientation" therein. In fact, it appears that since 1987, there have been at least twenty-six attempts to amend the statute to include "sexual orientation," and each attempt has failed.[20]

Certainly, unsuccessful legislative efforts can be attributed to a myriad of reasons, but regardless of the reasons behind the numerous failed attempts to amend § 61-6-21 to include "sexual orientation," the very fact that there have been twenty-six failed attempts cannot be ignored. Indeed, other courts have found the repeated rejection of legislation to be clear expressions of intent. *See Heckler v. Day*, 467 U.S. 104, 118 n.30, 119

---

[20]In the Attorney General's amicus brief, the following are cited as the failed legislation: "H.B. 2851 (2008); H.B. 2851 (2007); H.B. 2225 (2006); H.B. 2442 (2006); H.B. 2225 (2005); H.B. 2442 (2005); H.B. 2004 (2003); H.B. 2042 (2003); H.B. 2226 (2003); H.B. 3147 (2003); H.B. 4464 (2002); S. 23 (2001); H.B. 2354 (2001); H.B. 2415 (2001); S. 422 (2000); H.B. 4392 (2000); H.B. 2114 (1999); H.B. 2481 (1998); S. 495 (1997); H.B. 2481 (1997); S. 457 (1996); H.B. 2775 (1995); S. 478 (1994); H.B. 4385 (1994); S. 319 (1993); H.B. 2426 (1993)." During the recent 2017 regular legislative session, a bi-partisan group of legislators introduced House Bill 2748 to amend West Virginia Code § 61-6-21 to include, among other characteristics, "sexual orientation." The bill was referred to the House Judiciary Committee, and no further action was taken. The amicus Lambda Legal Defense and Education Fund, Inc. suggests in its brief that the Legislature has repeatedly declined to add "sexual orientation" to the statute explicitly because it considers such coverage to be already be provided by the statute as it was enacted in 1987. It would be utterly nonsensical, however, for various members of the Legislature to attempt to amend West Virginia Code § 61-6-21 twenty-six times to add the words "sexual orientation" if the statute already so provided.

14

(1984) (recognizing repeated congressional rejection of imposing mandatory deadlines on agency adjudication of disputed disability claims and describing fact that "Congress has rejected repeated demands for mandatory deadlines" as a "clear . . . expression of congressional intent"); *State v. Gen. Paving Co.*, 590 F.2d 680, 683 (7th Cir. 1979) (finding that "[i]f the [*p*]*rima facie* evidence standard of Section 5(a) is to be changed, it is for Congress to do so" and giving weight to "the repeated refusals of Congress to enact the suggested provision"); *Yonga v. State*, 130 A.3d 486, 498 (Md. 2016) ("[W]hile intent may be discerned from legislative inaction, it is considered most appropriate generally only when a specific bill has been repeatedly brought to the General Assembly and rejected[.]"). Moreover, these unsuccessful legislative efforts are not only indicative of intent, but they are germane to the Legislature's right to define crimes. In this regard, the Legislature has chosen–repeatedly–not to amend West Virginia Code § 61-6-21(b) so as to include any additional characteristics that trigger criminal responsibility under the statute.

As we instructed in *King*, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." 234 W.Va. at 444, 766 S.E.2d at 391 (internal citations omitted); *see also State v. J.E.*, __ W.Va. __, 796 S.E.2d 880, 886 (2017) (explaining that Court was guided by "the precept that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there'" and concluding that "[h]ad the Legislature intended to include adult offenders convicted of

15

a criminal offense *and* adjudicated juvenile delinquents in W.Va. Code § 15-12-2(b), we presume it would have done so explicitly.") (internal citation omitted).  Through application of the presumption that the Legislature said in West Virginia Code § 61-6-21(b) what it meant and meant what it said, and based upon the common and plain meaning of the word "sex," as well as the Legislature's clear intent, we are left with the ineluctable conclusion that the word "sex" does not include "sexual orientation."

Critically, judicial challenge "is not a license for [this Court] to judge the wisdom, fairness, or logic of legislative choices." *MacDonald v. City Hosp., Inc.*, 227 W.Va. 707, 722, 715 S.E.2d 405, 420 (2011) (quoting *Fed'l Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  Consequently, although the State argues that we should disregard the "literal sense of the words" in West Virginia Code § 61-6-21(b) because not doing so leads to "injustice and absurdity[,]"[21] we disagree.  It is certainly not absurd for this Court to recognize not only the Legislature's right to define crimes and their punishment, but also the Legislature's indisputable intent not to expand West Virginia Code § 61-6-21(b) to include "sexual orientation."[22]  Moreover, there is no injustice where the

---

[21]Syl. Pt. 2, in part, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

[22]In addition to "sexual orientation," there have been multiple unsuccessful attempts to amend West Virginia Code § 61-6-21 to also include actual or perceived race and gender identity.

16

defendant remains charged on two counts of battery arising out of his alleged criminal misconduct.

Our decision herein is guided by the principle that "this Court is not permitted to engage in an examination of the public policy ramifications potentially resulting from [the statute's] application or to comment upon the wisdom of the legislation as unambiguously expressed." *State ex rel. Biafore v. Tomblin*, 236 W.Va. 528, 533, 782 S.E.2d 223, 228 (2016). Accordingly, although we do not comment on whether it would be good or bad policy for the Legislature to amend West Virginia Code § 61-6-21 to include "sexual orientation,"[23] we observe that our own rules expressly prohibit bias and discrimination in the courts of this state based on several categories, including both "sex" and "sexual orientation." Rule 2.3 of the Code of Judicial Conduct provides, in part:

> (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, *sex*, gender, religion, national origin, ethnicity, disability, age, *sexual orientation*, marital status, socioeconomic status, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

---

[23]We observe that in 2014, the Legislature enacted West Virginia Code § 18-2-5h and chose to provide protections based on an individual's sexual orientation in subsection (e)(4), which provides that "[s]chools shall not collect . . . (4) Any data concerning the sexual orientation or beliefs about sexual orientation of the student or any student's family member[.]"

(C) A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, *sex*, gender, religion, national origin, ethnicity, disability, age, *sexual orientation*, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

*Id.* (emphasis added). Similarly, Rule 3.6(A) of these same rules provides that "[a] judge shall not hold membership in any organization that practices invidious discrimination on the basis of race, *sex*, gender, religion, national origin, ethnicity, or *sexual orientation*." *Id.* (emphasis added). Likewise, our Trial Court Rules guard against bias by providing that

[a]s to matters in issue before any court, conduct and statements toward one another must be without bias with regard to such factors as gender, race, ethnicity, religion, handicap, age, and *sexual orientation* when such conduct or statements bear no reasonable relationship to a good faith effort to argue or present a position on the merits.

T.C.R. 4.06, in part.

Unlike criminal statutes that impose penalties, including the potential for imprisonment, our court rules do not. Thus, although the enumerated characteristics that trigger criminal responsibility under West Virginia Code § 61-6-21 are not as expansive as the enumerated characteristics under our court rules, just as the Legislature does not prescribe our rules, "[t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation." Syl. Pt. 2, in part, *Huffman v. Goals Coal Co.*, 223 W.Va. 724, 679 S.E.2d 323

18

(2009); *see also Banker v. Banker*, 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (internal citation omitted) ("It is not for this Court arbitrarily to read into [a statute] that which it does not say."); *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts are not free to read into the language what is not there, but rather should apply the statute as written."); *Tug Valley Pharmacy, LLC v. All Plaintiffs Below In Mingo Cnty.*, 235 W.Va. 283, 298, 773 S.E.2d 627, 642 (2015) (Benjamin, J., concurring) ("The principles of judicial conservatism *require* us . . . not to bestow upon ourselves the role of superlegislature simply because we do not believe [the Legislature] went far enough."); *accord State ex rel. Curry v. Carr*, 847 S.W.2d 561, 567 (Tx. Crim. App. 1992) (Miller, J., dissenting) ("Today a majority of this Court . . . acts . . . as a superlegislature making laws which the legislature has repeatedly rejected and effectuating its own intent rather than that of The Legislature.").

It is imperative to remember that "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray*, 230 W.Va. 355, 738 S.E.2d 21 (2013). This precept is particularly crucial to our analysis when the State essentially asks this Court to judicially amend West Virginia Code § 61-6-21 by expanding it to create a new felony when the Legislature has repeatedly chosen not to do so. As we

19

explained in *Morgan v. Trent*, the "'legislatures, not courts, define criminal liability.'" 195

W.Va. at 262, 465 S.E.2d at 262 (citation omitted).

Accordingly, we adhere to our to law that "[w]hen a statute is clear and

unambiguous and the legislative intent is plain, the statute should not be interpreted by the

courts, and in such case it is the duty of the courts not to construe but to apply the statute."

*General Daniel Morgan Post No. 548,* 144 W.Va. at 137, 107 S.E.2d at 354, syl. pt. 5.

Applying West Virginia Code § 61-6-21(b), as it is currently written, the State cannot

prosecute the defendant for an alleged criminal civil rights violation arising out of the

victims' sexual orientation.[24]  Accordingly, we affirm the circuit court's dismissal of Counts

I and III of the indictment.  The State may move forward with its prosecution on Counts II

and IV charging the defendant with battery under West Virginia Code § 61-2-9.

### B.  Certified Question

The State asserts that the circuit court erred in dismissing Counts I and III of

the indictment subsequent to this Court's refusal to docket the question certified by the

---

[24]During oral argument, a question was raised as to whether there was an Eighth
Amendment equal protection issue from the perspective of the alleged victims.  The parties
neither raised nor briefed an equal protection argument, either below or on appeal.
Consequently, such constitutional challenge is not properly before the Court.

circuit court. [25] Arguing that this Court only hears certified questions that are necessary to reach a decision in the pending case and then speculating that our refusal to docket the certified question meant the question need not be answered to decide the case, the State asserts that the circuit court also erred when it proceeded to answer the question, which resulted in its dismissal of Counts I and III of the indictment.[26]

Describing the procedural history related to the circuit court's certified question, the defendant asserts that the State never objected to the manner by which the lower court proceeded and, once this Court refused to docket the certified question, the issue of certification, itself, was moot. Regarding the manner in which the circuit court proceeded thereafter, the defendant asserts that the parties agreed upon a scheduling order for the submission of briefs on the issue of the applicability of West Virginia Code § 61-6-21(b), after which the circuit court ruled that it could not expand § 61-6-21(b) to include sexual

---

[25]The State also asserts that the circuit court erred by certifying the question under the Uniform Certification of Questions of Law Act, W.Va. Code §§ 51-1A-1 to -13, which is to be used by federal and foreign jurisdictions. The State correctly argues that the circuit court should have followed West Virginia Code § 58-5-2, which requires the circuit court to answer the question in the first instance, which the circuit court did not do in its certification order. Rule 17(a)(1) of our Rules of Appellate Procedure also requires a circuit court to answer the certified question presented. Although the circuit court should have followed West Virginia Code § 58-5-2 and our rule, that issue is now moot.

[26]This argument is linked to the State's assertion that it may prosecute on more than one legal theory. As previously discussed, the State offers the alternative theory that had one of the alleged victims been a female, the crime would not have occurred, therefore, the defendant allegedly committed the crime because of the victims' sex. We have found this argument to be unavailing. *See supra* note 8.

orientation.  The defendant notes that the circuit court stayed its order dismissing Counts I and III of the indictment to allow the State to pursue this appeal, which has brought the legal issue back to this Court for decision.

As provided in West Virginia Code § 58-5-2 (2012),[27]

> [a]ny question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the Supreme Court of Appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back.

This statute further provides that "[t]he procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the Supreme

---

[27]Interestingly, our research revealed very few reported decisions where this Court has answered certified questions in criminal proceedings.  *See*, *e.g.*, *State v. Bias*, 177 W.Va. 302, 352 S.E.2d 52 (1986) (answering certified questions on basis that questions concerned circuit court's jurisdiction); *State v. Vollmer*, 163 W.Va. 711, 711-12, 259 S.E.2d 837, 838 (1970) (answering certified question on basis it raised issue of jurisdiction, as provided under W.Va. Code § 58-5-2); *State v. De Spain,*139 W.Va. 854, 81 S.E.2d 914 (1954) (finding Court did not have jurisdiction to answer certified question addressed to sufficiency of search warrant which fell outside parameters of W.Va. Code § 58-5-2).  In *State v. Lewis*, 188 W.Va. 85, 422 S.E.2d 807 (1992), however, this Court questioned its jurisdiction to consider a certified question in a criminal case, holding that "W.Va. Code, 58-5-2 (1967), is designed for certifying questions in civil cases." *Lewis*, 188 W.Va. at 86, 422 S.E.2d at 808, syl. pt. 4, in part.  Five years after *Lewis* was decided, West Virginia Code § 58-5-2 was amended to provide for "any question of law" without limitation.

Court of Appeals." In turn, this Court's procedural rules provide that when a certified question is submitted, this Court "*may, in its discretion*, schedule the case for argument under Rule 19 or Rule 20, issue an order declining to accept the certified question, or issue an otherwise appropriate order." R.A.P. 17(a)(6), in part (emphasis added).

The State mistakenly assigns legal significance to our exercise of discretion in refusing to docket the previously certified question. Viewing our refusal as an indication that the question need not be answered to decide the case, the State argues that the circuit court erred by subsequently ruling on the legal issue. Although we previously held that "'this Court will not consider certified questions not necessary to a decision of the case[,]'"[28] such holding clearly does not preclude us from refusing to docket certified questions for other reasons.[29] Morever, as we also previously held, "[t]he action of this court, in refusing to docket for review a case certified under Code, 58-5-2, is not to be construed as a final adjudication of the questions presented on the certification, or as limiting the court in its

[28]Syl. Pt. 6, *West Va. Water Serv. Co. v. Cunningham*, 143 W.Va. 1, 98 S.E.2d 891 (1957); *see also* Syl. Pt. 5, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990) (same); Syl. Pt. 7, *Shell v. Metropolitan Life Ins. Co.*, 181 W.Va. 16, 380 S.E.2d 183 (1989) (same).

[29]Even in cases where we have docketed a certified question, we have sometimes declined to answer it for a variety of reasons. *See*, *e.g.*, *Williamson v. Greene*, 200 W.Va. 421, 428 n.12, 490 S.E.2d 23, 30 n.12 (1997) ("We decline to answer certified question 3 in light of plaintiff's failure to address the issue raised therein."); *Holloman v. Nationwide Mut. Ins. Co.*, 217 W.Va. 269, 272, 617 S.E.2d 816, 819 (2005) ("Finding the answer to the first question to be dispositive, this Court declines to address the second certified question.").

decision upon the record presented on final hearing." Syl. Pt. 1, *Hastings v. Finney*, 119 W.Va. 301, 193 S.E. 444 (1937). The holding in *Hastings* clearly contemplates the circuit court ruling upon the issue raised in a certified question, following this Court's refusal to docket the same, and this Court retaining the ability to address the issue if raised in a subsequent appeal, as in the case at bar.

In addition, we further observe the general absence of any language in our administrative orders refusing to docket certified questions that would restrict the manner in which the circuit court thereafter addresses the issue. Accordingly, we take this opportunity to make clear, and we now hold, that this Court's exercise of discretion under Rule 17 of the West Virginia Rules of Appellate Procedure in refusing to docket a certified question presented to this Court under West Virginia Code § 58-5-2 (2012) is neither an express nor an implicit ruling on the merits of the legal issue presented therein, and the circuit court may thereafter take such action and make such rulings in the matter as it deems appropriate.

Once this Court refused to docket the certified question, the circuit court ruled upon the legal issue, which led to its dismissal of Counts I and III of the indictment. The State has appealed that ruling, as provided under West Virginia Code § 58-5-30. As contemplated in *Hastings*, the legal issue is now before us for decision. In short, we find no

24

error in the circuit court ruling on the legal question once this Court refused to docket the certified question.

## IV. Conclusion

For the foregoing reasons, the circuit court's May 13, 2016, order dismissing Counts I and III of the defendant's indictment is hereby affirmed. This action is remanded for additional proceedings consistent with this opinion.

Affirmed and Remanded