**FILED**

**June 5, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 25-80 – *State of West Virginia ex rel. State of West Virginia v. The Honorable Joseph Barki, Judge, Circuit Court of Ohio County, and Shawn Pethtel*

BUNN, Chief Justice, concurring, and joined by Justice Titus:

Twenty-four years after Mr. Pethtel was sentenced to an overall term of imprisonment of 53 to 155 years for numerous convictions, including twenty instances of third-degree sexual assault, the circuit court, with a new judge, erroneously and without legitimate authority ordered "changes" to Mr. Pethtel's sentence purportedly pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure and reduced his sentence significantly. I concur with the majority because I agree that the Court should grant the State's requested writ prohibiting the circuit court from enforcing its clearly erroneous order that reduced Mr. Pethtel's sentence. However, the majority's protracted analysis to reach that conclusion is both unnecessary and ill-considered, as it needlessly and imprudently reviews a sentencing hearing conducted more than two decades ago, as if this Court were considering an initial direct appeal. The majority also fails to grapple with the applicable factors we must employ to issue a writ when the State pursues a petition for a writ of prohibition in a criminal case.

A brief procedural history is helpful to explain my disagreement with the majority's approach. After a jury convicted Mr. Pethtel in November 2000 of twenty counts of third-degree sexual assault, three counts of filming a minor engaged in sexually explicit

1

conduct, and one related conspiracy count, he then also pled guilty to one count of possession of a controlled substance with intent to deliver and one count of nighttime burglary. In December 2000, the circuit court sentenced him to one to five years of imprisonment for each third-degree sexual assault conviction, a determinate sentence of ten years of imprisonment for each count of conviction for filming a minor engaged in sexually explicit conduct, a term of one to five years of imprisonment for the conspiracy conviction, a term of one to five years of imprisonment for his conviction for possession of a controlled substance with intent to deliver, and a term of one to fifteen years of imprisonment for the nighttime burglary conviction. The sentencing court ordered each sentence to run consecutively and made numerous findings, including that Mr. Pethtel showed no remorse, that there was a substantial risk that Mr. Pethtel would reoffend, that he failed to benefit from previous probation, that he failed to accept responsibility, and that he was "in the truest sense a sexual predator" who "prey[s] upon the weakest people in our society."

As the majority details, after his initial sentencing Mr. Pethtel engaged in extensive litigation for years, including filing the following: (1) a direct appeal, which was refused by this Court in 2004; (2) a petition for a writ of habeas corpus regarding a purported violation of the Interstate Agreement on Detainers Act, which was granted by the circuit court, then reversed by this Court in 2006, with subsequent unsuccessful

litigation in federal court;[1] (3) an initial motion pursuant to Rule 35, which the circuit court denied, with the denial affirmed by the Court in 2013; and (4) a second petition for a writ of habeas corpus in 2014, which Mr. Pethtel later moved to dismiss.[2]

In 2024, Mr. Pethtel filed his second motion for relief with the circuit court pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure, arguing that because he "exercised his right to remain silent rather than to allocate [sic] and speak on his own behalf" the sentencing court "considered his silence in imposing maximum, consecutive sentences."[3] He also argued that (1) the sentencing court erroneously found that he was a sexual predator, but conceded that he would be subject to lifetime registration anyway; (2) he received an untimely presentence investigation report; and (3) he did not receive certain credit for time served. The circuit court held a hearing, after which the State filed its response to Mr. Pethtel's motion.

Ultimately, the circuit court entered an order requiring "changes" to Mr. Pethtel's sentence and specifying that the court "would like [Mr. Pethtel] to be on parole[.]"

---

[1] *See* Maj. op. at 6 n.12 (detailing Mr. Pethtel's Interstate Agreement on Detainers Act litigation).

[2] *See* Maj. op. at 8 n.13.

[3] The majority recites that he asserted in his Rule 35 motion that there was "bias on the part of the sentencing judge" but the allegation of bias is not a particular ground for relief raised by Mr. Pethtel in his memorandum in support of the motion. Rather, he advanced this issue for the first time in response to the State's petition for a writ of prohibition.

While the court's order listed extensive grievances and lobbed many accusations at the sentencing court regarding Mr. Pethtel's original sentence and the sentencing court's commentary, the court made no findings that Mr. Pethtel's sentence was illegal or that the sentencing court violated any of Mr. Pethtel's constitutional rights. Specifically, the circuit court found the following, as the majority notes:

> The [c]ourt acknowledges that any of the allegations of misconduct by the judge alone would not mean that it was an illegal sentence. But, taking them together, it is certainly a sentence that may not be illegal by itself, but taking into consideration the impact on the Petitioner's life and our duty to support and believe in Due Process in the Constitution of the United States and in the Constitution of West Virginia, it certainly is not an acceptable sentence nor is it acceptable conduct by a judge.

Still, as detailed by the majority, the circuit court changed the sentences for many of the counts of conviction to run concurrently, rather than consecutively, and reduced the incarceration terms of other counts of conviction. After the court reduced Mr. Pethtel's sentence, the State filed the petition for a writ of prohibition to prevent the court from enforcing its order.

I first take issue with the majority's failure to address Syllabus Point 5 of *State v. Lewis* in its analysis. *See* 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).When the Court considers whether to grant a writ in a criminal case requested by the State, we apply well-known factors and limitations set forth in Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996),

4

and Syllabus Point 5 of *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807. *See, e.g.*, *State ex rel. State v. Cuomo*, ___ W. Va. ___, ___, 927 S.E.2d 189, 197 (2026) (applying both syllabus points). The requirements of Syllabus Point 5 of *Lewis* include that, "[w]here the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction." Syl. Pt. 5, in part, *Lewis*, 188 W. Va. 85, 422 S.E.2d 807. While the majority discusses the first three *Hoover* factors, it only recites Syllabus Point 5 of *Lewis* on the Syllabus Page and in its standard of review—then fails to discuss *Lewis* entirely and does not analyze why or how it applies to the circumstances presented. I would have directly addressed how Syllabus Point 5 of *Lewis* is implicated in this case, where only a defendant's sentence is affected, not the underlying prosecution, and how, in circumstances regarding sentences, we may still consider circuit court decisions by writ of prohibition. *See State ex rel. State v. Cohee*, 251 W. Va. 474, 484-85, 914 S.E.2d 709, 719-20 (2025) (granting the writ of prohibition to "prohibit the circuit court from entering any sentence other than a recidivist life sentence"). I would have used this case as an opportunity to clarify Syllabus Point 5 of *Lewis*, either by circumscribing its application to cases where the State seeks a writ prior to a final conviction, or by expanding its application by clarifying that while the State is not deprived of its right to prosecute when a sentencing court veers away from the applicable law, the State has no right of direct appeal and should be able to invoke this Court's original jurisdiction to prohibit clear errors of law in the sentencing context.

I also disagree with the majority's overwrought and unnecessary analysis of the third *Hoover* factor—whether the circuit court clearly erred in granting, in part, Mr. Pethtel's "Motion for Rule 35 Relief." The only operable portion of Rule 35 of the West Virginia Rules of Criminal Procedure available to the circuit court to change Mr. Pethtel's sentence was if his sentence were illegal.[4] The circuit court's clear error is evident on the face of its order. The court, granting Mr. Pethtel's motion in part, admitted that Mr. Pethtel's original sentence was not illegal and, correspondingly, made no finding that the original sentence was illegal. Thus, the court had no authority to reduce Mr. Pethtel's sentence pursuant to Rule 35(a). Without a finding of illegality,[5] the court's disagreements with the sentencing court's actions and reasoning could not be addressed through the Rule 35(a) lens. In fact, the majority acknowledges, and I agree, that "it was clear error for the court to grant relief under [Rule 35(a)] where it did not make a finding that Mr. Pethtel's sentence

---

[4] I agree with the majority's analysis that Rule 35(a) of the West Virginia Rules of Criminal Procedure allows a circuit court to correct a defendant's illegal sentence at any time and, given the time limitations in the rest of the Rule, no other portions of Rule 35 allowed the court to reduce or correct Mr. Pethtel's sentence. *See* W. Va. R. Crim. P. 35(a) ("*Correction of sentence*. – The court may correct an illegal sentence at any time . . . .").

[5] In *State v. Hubbard*, 11-0690, 2012 WL 2892350, at *3 (W. Va. Feb. 13, 2012) (memorandum decision), the Court recognized that illegal sentences often concern the length of the sentence in relationship to the offense of conviction's prescribed punishment: "while most illegal sentences are struck down for excess, so too can a sentence be illegal for failing to meet the statutory minimum punishment." The United States Court of Appeals for the Seventh Circuit, in discussing a prior version of the Federal Rule of Criminal Procedure 35(a) which substantially mirrors our current Rule, noted that "[t]raditionally, an illegal sentence was one either outside the applicable statutory range, in violation of double jeopardy principles, or inherently contradictory or ambiguous[.]" *United States v. Corbitt*, 13 F.3d 207, 211 n.6 (7th Cir. 1993). The circuit court did not find any such illegality in this case.

was illegal[.]" Maj. op. at 24. My analysis regarding whether the court clearly erred would have been restrained to that issue, as the order—the subject of the requested writ—was not proper or permitted under Rule 35. The majority's analysis regarding whether the court clearly erred, under the third *Hoover* factor, should have ended there.

Yet the majority provides an additional analysis of Mr. Pethtel's original sentence as though reviewing his sentence on direct appeal from the original sentencing court. The majority introduces constitutional issues without corresponding findings by the circuit court and seemingly ignores that the sentence is decades removed from the sentencing order and in an incorrect posture to conduct that review in any case. While the majority acknowledges that the *Hoover* and *Lewis* factors govern the State's invocation of our original jurisdiction in this criminal case, it does not apply that standard, or it would have recognized the circuit court's lack of authority under Rule 35(a) to correct a sentence without the circuit court's finding that the initial sentence was illegal, without further discussion. Instead, under the guise of reviewing the court's order, the majority embarks on a needless examination of Mr. Pethtel's underlying complaints about his decades-past sentencing hearing and, in doing so, miscasts Rule 35(a) for use well beyond its legitimate purposes.[6]

---

[6] In its analysis, the majority inexplicably applies our standard of review of an order resulting from a Rule 35 motion on a direct appeal to still find that the court clearly erred. This standard of review for analyzing Rule 35 orders requires the Court to review the lower court's overall decision under an abuse of discretion standard, its factual determinations under a clearly erroneous standard, and questions of law de novo. Syl. Pt. 1, *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996); *see also* Syl. Pt. 3, Maj. op. We use this standard

7

The majority's *direct* address of Mr. Pethtel's grievances with his underlying sentence from 2000, raised to this Court in response to the State's petition, legitimizes Mr. Pethtel's complaints about his original sentence—primarily, that the sentencing court violated his Fifth Amendment rights. The majority's approach—including pages of unnecessary analysis reviewing the sentencing court's actions as if we were considering a direct appeal—essentially allows Mr. Pethtel to yet again appeal his original sentence, although the time for a direct appeal has long since passed and the circuit court made no finding that his sentence was illegal. Particularly in regard to his Fifth Amendment complaint, we should exercise restraint and not decide constitutional issues when that analysis is unnecessary. *See Jean v. Nelson*, 472 U.S. 846, 854 (1985).

Furthermore, while the majority ultimately recognizes that the circuit court made no finding that that the sentencing court was biased, it still directly addresses Mr. Pethtel's claim in that regard as well.[7] Although the majority finds that any alleged bias

_____

of review when a defendant appeals a circuit court's order on a Rule 35 motion, as the State has no corresponding right to appeal that order. *See generally State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017) (discussing the State's limited right to appeal). While acknowledging that the circuit court had no authority to change Mr. Pethtel's sentence pursuant to Rule 35(a), the majority still confusingly cites this inapplicable standard of review and analyzes the issues raised by Mr. Pethtel as though Rule 35(a) were a proper mechanism to resurrect these long-stale challenges.

[7] Also, to the extent that Mr. Pethtel now raises the issue of bias by the sentencing court, he brought no such due process allegation to the circuit court in his Rule 35 motion, contrary to the majority's contention. In fact, he did not raise any potential bias allegation until his response to this Court after the State filed the petition for a writ, in which Mr. Pethtel argued that the circuit court "essentially found" that the sentencing judge was

issue was waived by his failure to raise it in many of his preceding cases, the majority's analysis also unnecessarily directly addresses his contention on those grounds too.[8]

The majority's approach in undertaking substantive review to come to its ultimate conclusion that Mr. Pethtel's constitutional right to remain silent was not violated and the judge was not biased creates precedent for giving multiple unwarranted opportunities for review of issues long since waived and staled by time, and needlessly wastes court resources. Not content to rest on Rule 35(a)'s plain restriction that to correct a sentence, it must be first found to be *illegal*, the majority instead resurrects dead issues that could have been raised multiple times previously—on direct appeal, a prior Rule 35 motion, a denied habeas petition, and a habeas petition pending at the time Mr. Pethtel filed the subsequent Rule 35 motion—confounding the writ standard in the process.[9] I fear the

---

biased. This late-breaking argument was not worthy of any substantive analysis by the majority.

[8] *See* Maj. op. at 22-23 ("Any claim that Mr. Pethtel's sentence was the result of judicial bias should have been raised on direct appeal, but it was not. Further, the issue of judicial bias could have been raised in the state and federal petitions for habeas corpus relief filed by Mr. Pethtel, but it was not. Finally, the issue could have been raised in Mr. Pethtel's post-trial motion to dismiss or in his first Rule 35(a) motion, but it was not. Throughout the entirety of this case, which now spans more than twenty-five years, Mr. Pethtel has been zealously represented by competent counsel. On these facts, we have little trouble concluding that any claim of judicial bias has been waived." (footnote omitted)).

[9] The State makes the point that "[t]he circuit court's order, "if allowed to stand, would eviscerate Rule 35(a), and fundamentally change the finality of sentences imposed in West Virginia." I agree and am further concerned that the majority's insistence on this type of direct analysis, when it should be reviewing the Rule 35 order under *Hoover* and *Lewis*'s factors, will also fundamentally change the finality of sentences and this Court's involvement from this procedural posture.

majority's lack of restraint leaves doors open that criminal defendants may attempt to run through decades after those issues could have properly been presented to this Court.

For these reasons, I respectfully concur. I am authorized to state that Justice Titus joins me in this concurring opinion.