**FILED**

**May 29, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-211

_____

STATE OF WEST VIRGINIA *ex rel.*,
STATE OF WEST VIRGINIA,
Petitioner

v.

THE HONORABLE TIMOTHY L. SWEENEY,
Judge of the Circuit Court of Ritchie County, and
EARNEST LEE OWENS,
Respondents

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted: April 21, 2026
Filed: May 29, 2026

George J. Cosenza, Esq.                    John B. McCuskey, Esq.
Cosenza Law Office                         Attorney General
Parkersburg, West Virginia                 Andrea Nease, Esq.
Counsel for Respondent,                    Deputy Attorney General
Earnest Lee Owens                          Charleston, West Virginia
                                           Counsel for Petitioner,
                                           State of West Virginia

JUSTICE WOOTON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the

i

application for a writ of prohibition must be promptly presented." Syl. Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

3.    "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers[.]" Syl. Pt. 1, in part, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

WOOTON, Justice:

Petitioner, the State of West Virginia, invokes this Court's original jurisdiction seeking a writ of prohibition to prevent the Circuit Court of Ritchie County from enforcing its order prohibiting the State from prosecuting Respondent Earnest Lee Owens on the misdemeanor charge of obstructing a law enforcement officer.[1] Respondent Owens was charged with obstructing a law enforcement officer in a criminal complaint filed in magistrate court. After the criminal complaint was filed, Respondent Owens filed a two-sentence motion to dismiss. The magistrate court denied this motion. Respondent Owens then filed a writ of prohibition in circuit court, arguing that the factual basis supporting the obstruction charge was insufficient. The circuit court held an evidentiary hearing, which included testimony from one of the arresting officers and eight exhibits introduced by Respondent Owens. Following the hearing, the circuit court granted the writ of prohibition, concluding that "there is no factual basis for an obstruction charge." Thereafter, the State filed the instant writ, asserting that the circuit court exceeded its authority and committed clear legal error by conducting "an evidentiary hearing,

---

[1] *See* W. Va. Code § 61-5-17(a) ("A person who by threats, menaces, acts, or otherwise forcibly or illegally hinders, or obstructs or attempts to hinder or obstruct a law-enforcement officer . . . acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 nor more than $500 or confined in jail not more than one year, or both fined and confined.").

1

assess[ing] the sufficiency of the evidence underlying the magistrate's finding of probable cause, and subsitut[ing] its judgment for that of the magistrate."

Upon review, we find that the circuit court exceeded its legitimate powers by granting the writ of prohibition and that the State will be damaged in a way that is not correctable on appeal. Therefore, we grant the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 15, 2023, Deputy J.C. Egan of the Ritchie County Sheriff's Department responded to a 911 call from a tenant at an apartment building who reported that he had an altercation with the building's maintenance worker, Respondent Owens. According to the tenant, Respondent Owens "chest bumped him" and threatened bodily harm over an argument about mold remediation in the tenant's bathroom. Further, the tenant told the 911 operator that Respondent Owens left the apartment, entered a black truck, and drove to the Save-A-Lot parking lot that was located behind the apartment complex. Deputy Egan responded to the call, observed the black truck in the Save-A-Lot parking lot, and pulled in front of the truck with his emergency lights flashing.

Deputy Egan approached the driver's side of the truck and told Respondent Owens that he was investigating a 911 call regarding a possible assault and battery.[2]  He

---

[2] This interaction was recorded by Deputy Egan's body camera.

2

asked Respondent Owens to exit the truck. Respondent Owens refused and locked the doors of his truck. Deputy Egan warned Respondent Owens that he could be arrested for obstructing a police investigation. Respondent Owens informed Deputy Egan that he was on the phone with his wife and then stated, "I can talk right through the window. Talk to me." Deputy Egan then said,

> I have no idea if you have any weapons. There's been an altercation that was reported. I'm trying to conduct a lawful investigation. You have not been compliant this entire time. You have been yelling at me, conducting yourself in a conduct that is not whatsoever compliant with law enforcement.

Respondent Owens replied, "You do not have an investigation because nothing happened." Deputy Egan then stated, "911 was called. I have to be here for an investigation." Thereafter, Deputy Egan again asked Respondent Owens to exit the truck "so I can be assured you don't have any weapons." Respondent Owens replied, "I can talk through the window."

Deputy Egan called for backup and another officer, Deputy B.K. Casto, arrived at the scene. Both officers attempted and failed to convince Respondent Owens to exit the truck. The officers warned Respondent Owens that if he did not exit the truck, they would break the truck's window and drag him out of the vehicle. Respondent Owens replied, "Break the damn window. . . . Break it!" Thereafter, the officers broke the driver's side window and removed Respondent Owens from the truck. The officers pinned him to the ground, placed him in handcuffs, and discovered a loaded handgun tucked into the back

3

waistband of his pants.[3]  Respondent Owens suffered lacerations to his arms, wrist, stomach, and head as a result of being removed from the truck.  He was initially treated for his injuries by EMS and then taken to the hospital for additional treatment.

Due to this incident and the alleged altercation with the tenant, Respondent Owens was arrested and charged in a criminal complaint with two misdemeanors: (1) obstructing an officer in violation of West Virginia Code § 61-5-17(a); and (2) assault, based on the altercation with the tenant, in violation of West Virginia Code § 61-2-9(b).[4] Deputy Egan presented the criminal complaint to the magistrate court.  It included Deputy Egan's detailed factual recitation of the incident with Respondent Owens.

After the criminal complaint was filed in magistrate court, Respondent Owens filed a two-sentence motion to dismiss, requesting dismissal "on the grounds that Deputies J.C. Egan and B.K. Casto had no legal authority to arrest [Respondent Owens] for obstructing an officer, in violation of West Virginia Code § 61-5-17 or battery, in violation of West Virginia Code § 61-2-9."  The magistrate court denied this motion. Respondent Owens then filed a writ of prohibition with the circuit court, asserting that

---

[3] There is no allegation that Respondent Owens illegally possessed the handgun.

[4] *See* W. Va. Code § 61-2-9(b) ("Any person who unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act that places another in reasonable apprehension of immediately receiving a violent injury is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not more than six months or fined not more than $100, or both fined and confined.").

4

there was not a proper factual basis supporting the obstruction charge because: (1) he had the right to remain silent when the officers approached him at his truck; (2) failure to cooperate with a law enforcement officer does not constitute obstruction; and (3) the officers "could not detain or arrest [Respondent Owens] for the alleged assault that occurred at the apartment complex, because the misdemeanor was not committed in their presence."

The circuit court held an evidentiary hearing on the writ of prohibition. At the beginning of the hearing, the prosecutor stated, "I wanted to make a motion to dismiss based upon the subject matter at hand. I don't believe this is, this writ is appropriate given the subject matter. It is not a jurisdictional question and [it is] something that can be cured on appeal." The circuit court took the motion under advisement but did not address this motion in its subsequent order.

Deputy Egan was the only witness who testified at the hearing. He was asked why he ordered Respondent Owens to exit the truck and replied,

> He was the aggressor in a 911 call allegedly so, therefore, his demeanor also increased my fear that there may be a potential for any weapons, and so for my safety I asked him to step out of the vehicle to check to make sure there was no weapon that he could cause me harm with.

When asked to describe the factual basis for the obstruction charge, Deputy Egan replied, "He failed to get out of the vehicle so I could check for weapons for my officer safety."

Respondent Owens introduced eight exhibits during the hearing including photographs documenting the injuries he suffered as a result of the arrest and bodycam video footage of the arrest.

On February 12, 2025, the circuit court entered an order granting the writ of prohibition as to the obstruction charge.[5]  The circuit court determined that "[w]hen [Respondent Owens] indicated he did not wish to cooperate with Deputy Egan, he should have been permitted to leave or Deputy Egan should have left and prepared a criminal complaint against [Respondent Owens], if probable cause could have been established, and then lawfully arrested [Respondent Owens]."  Based on the foregoing, the circuit court ruled that the magistrate court's order "denying [Respondent Owens's] motion to dismiss manifests clear error as a matter of substantive law.  Specifically, there is no factual basis for an obstruction charge.  Thus, the Magistrate exceeded her legitimate powers."

Following entry of this order, the State filed a petition for a writ of prohibition with this Court, asking us to stop the circuit court from enforcing its order requiring dismissal of the obstruction charge.

## II. STANDARD OF REVIEW

---

[5] The circuit court's order did not prohibit the State from pursuing the assault charge based on the alleged altercation with the tenant.  The relief granted in the writ only related to the obstruction charge.

6

This Court has set forth the following standard for issuance of a writ of prohibition when it is alleged that a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

In this case, the State seeks a writ of prohibition to prevent the circuit court from enforcing its order requiring the State to dismiss the obstruction charge. We have held that the State may seek a writ of prohibition under limited circumstances in criminal cases:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate

7

that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syl. Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

## III. ANALYSIS

The State contends that the circuit court erred by granting the writ of prohibition. It argues that the *Hoover* factors weigh in its favor, emphasizing that it "has no other means to obtain relief, and the circuit court's error cannot be corrected on appeal because direct appeal is unavailable." As explained below, we agree with the State that the circuit court exceeded its legitimate powers by granting the writ requiring the State to dismiss the obstruction charge. Our discussion explaining this conclusion consists of (1) a review of the magistrate court's role when reviewing a criminal complaint; (2) how that process unfolded in this case; and (3) an examination of the *Hoover* factors.

The legal proceedings against Respondent Owens began when Deputy Egan submitted the criminal complaint to the magistrate court. The submission of a criminal complaint under these circumstances is governed by Rule 3 of the Rules of Criminal Procedure for Magistrate Courts. It provides:

8

Rule 3. Complaint.

The complaint shall be presented to and sworn or affirmed before a magistrate in the county where the offense is alleged to have occurred. Unless otherwise provided by statute, the presentation and oath or affirmation shall be made by a prosecuting attorney or a law enforcement officer showing reason to have reliable information and belief. **If from the facts stated in the complaint the magistrate finds probable cause,** the complaint becomes the charging instrument initiating a criminal proceeding.

(Emphasis added). *See also* W. Va. Code § 50-4-2 ("Except where the provisions of this code or rule of the Supreme Court of Appeals permit the commencement of a criminal prosecution through the issuance of a citation, a criminal prosecution shall be commenced by the filing of a complaint in accordance with the requirements of rules of the Supreme Court of Appeals."); W. Va. Code § 62-1-1 ("The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a [magistrate].").

This Court has recognized that a criminal complaint "is only the first of many steps in a criminal prosecution. Its essential function is informative, not adjudicative. It is enough that a fair-minded magistrate could conclude that the facts and circumstances alleged justify further criminal proceedings and that the charges are not merely capricious." *State ex rel. Walls v. Noland*, 189 W. Va. 603, 606, 433 S.E.2d 541, 544 (1993) (internal citation and quotation omitted). Additionally, in *Noland*, we noted that "[t]o be sufficient, a complaint must only be minimally adequate. This is to be evaluated in a common sense

9

rather than a hypertechnical manner, in setting forth the essential facts establishing probable cause." *Id.* (internal quotation and citation omitted). Further, in *Noland*, we explained that the purpose of a criminal complaint is to enable the magistrate

> to make a neutral judgment that resort to further criminal process is justified. A complaint must provide a foundation for that judgment. It must provide the affiant's answer to the magistrate's hypothetical question, "What makes you think that the defendant committed the offense charged?" . . . It simply requires that enough information be presented to the [magistrate] to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process.

*Id.* at 607, 433 S.E.2d at 545 (internal quotation and citation omitted).[6]

In the instant case, the complaint Deputy Egan submitted to the magistrate court included a detailed factual recitation of his interaction with Respondent Owens that formed the basis of the obstruction charge. Based on the information submitted by Deputy Egan, the magistrate found that probable cause existed and the complaint became the charging instrument initiating the criminal proceeding. After this initial finding of probable cause was made, Respondent Owens filed a motion to dismiss in magistrate court, which

---

[6] We also note that under Rule 4(b) of the Rules of Criminal Procedure for Magistrate Courts, "The finding of probable cause may be based upon hearsay evidence in whole or in part."

was subsequently denied. Respondent Owens then filed a writ of prohibition with the circuit court.

When the writ of prohibition was filed, the case had not proceeded beyond the magistrate court's initial probable cause determination. Thus, the circuit court's sole inquiry should have been whether the magistrate court's finding of probable cause (1) involved an absence of jurisdiction or (2) exceeded the magistrate court's legitimate powers. *See* Syl. Pt. 1, in part, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers[.]"). Jurisdiction was not a contested issue in this matter; therefore, the only proper inquiry before the circuit court was whether the magistrate court exceeded its legitimate powers by making its initial probable cause finding. We reiterate that the magistrate court's initial probable cause determination is based solely on "the facts stated in the complaint[.]" W. Va. R. Crim. P. Mag. Cts. 3. Instead of confining its analysis to this issue—whether the magistrate court exceeded its legitimate powers by finding probable cause based on the facts stated in the complaint—the circuit court held an evidentiary hearing that included the submission of eight exhibits introduced by Respondent Owens, as well as testimony from Deputy Egan. Thus, this evidentiary hearing went well beyond consideration of whether the magistrate court exceeded its legitimate powers by making an initial probable cause finding based on the facts stated in the complaint.

11

Turning to the narrow inquiry the circuit court should have undertaken, we conclude that the magistrate court did not exceed its legitimate powers by making its initial probable cause finding based on the facts stated in the complaint. In *Noland*, this Court outlined five minimal requirements that a criminal complaint must satisfy to be sufficient:

> A complaint is sufficient . . . if it answers the following five questions: "(1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so? or How reliable is the informant?"

*Noland*, 189 W. Va. at 606-07, 433 S.E.2d at 544-45 (quoting *State v. White*, 295 N.W.2d 346, 350 (Wis. 1980)).

The complaint Deputy Egan presented to the magistrate court clearly satisfied these five inquiries. It provided that (1) Respondent Owens was being charged; (2) with obstruction; (3) based on his interaction with Deputy Egan and Deputy Casto in the Save-A-Lot parking lot in Ritchie County on August 15, 2023; (4) the charge was based on Respondent Owens's "refusal to exit the vehicle [which] caused concern to the Deputy that there may be weapons present in the vehicle"; and (5) the information in the complaint was provided by Deputy Egan. We emphasize that these are minimal requirements and that the initial probable cause determination is merely the first step in the criminal proceeding, which is intended to be an expedited, simple process. *See* W. Va. R. Crim. P. Mag. Cts. 2 ("These rules are intended to provide for the just determination of every

12

criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.").

Based on the foregoing, we conclude that the circuit court erred by holding an evidentiary hearing and by prematurely weighing the State's proffered evidence against the elements of the obstruction charge. The only inquiry the circuit court should have considered was whether the magistrate court exceeded its legitimate powers by finding probable cause based on the facts stated in the complaint. Our review of this narrow inquiry reveals that the magistrate court did not exceed its legitimate powers by making its initial probable cause finding. Therefore, we find that the circuit court exceeded its legitimate powers by granting the writ which required the State to dismiss the obstruction charge.[7]

Applying this ruling to the *Hoover* factors, we find that the State is entitled to relief in prohibition. *See* Syl. Pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. Our

---

[7] Additionally, we repeat our familiar admonition that extraordinary relief is only appropriate in extremely limited instances. *See State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 45, 829 S.E.2d 35, 45 (2019) ("[W]e remind the parties that a writ of prohibition is an extraordinary remedy to be utilized in extremely limited instances."); *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 37, 454 S.E.2d 77, 82 (1994) (Cleckley, J., concurring) ("[W]rits of prohibition . . . provide a drastic remedy to be invoked only in extraordinary situations."). The magistrate court's initial probable cause finding in this case was not an extraordinary ruling necessitating the utilization of an extraordinary remedy.

examination focuses mainly on the first three *Hoover* factors.[8]  Having concluded that the circuit court exceeded its legitimate powers by prohibiting the State from pursuing the obstruction charge against Respondent Owens, it is clear that the third *Hoover* factor, "whether the lower tribunal's order is clearly erroneous as a matter of law," has been satisfied.  *Id.*  This factor is entitled to "substantial weight."  *Id.*  Next, we find that the State easily satisfies the first two *Hoover* factors because it has "no other adequate means, such as direct appeal, to obtain the desired relief," and it will be "damaged in a way that is not correctable on appeal."  *Id.*[9]  Therefore, we conclude that the *Hoover* factors weigh in the State's favor and that the State is entitled to relief in prohibition.

---

[8] While mainly focusing on the first three *Hoover* factors, we note that in a number of recent cases, we have found that a circuit court exceeded its legitimate powers by granting a defendant's pretrial motion to dismiss based on the defendant's argument that the factual basis for the criminal charges was insufficient.  *See State ex rel. State v. Cuomo*, ___ W. Va. ___, 927 S.E.2d 189 (2026); *State ex rel. State v. Gwaltney*, 249 W. Va. 706, 901 S.E.2d 70 (2024); *State ex rel. State v. Gwaltney*, 250 W. Va. 695, 908 S.E.2d 192 (2024).  These recent cases involved circuit courts dismissing indictments after concluding that the facts contained in the indictments were insufficient.  The instant case is distinguishable from these three cases because Respondent Owens was charged by criminal complaint, rather than by an indictment.  However, to the extent the fourth *Hoover* factor —"whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law"—weighs in favor of either party, we find that these recent cases involve similar concerns to those present in the instant matter. Syl. Pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12.  Therefore, we conclude that the fourth *Hoover* factor weighs in the State's favor.

[9] The State has only limited rights to appeal in criminal cases under circumstances that are not present in the instant case.  *See* Syl. Pt. 1, *State v. Jones*, 178 W. Va. 627, 363 S.E.2d 513 (1987).  Additionally, because the circuit court's  ruling deprived the State of

(continued . . .)

# IV. CONCLUSION

Based on the foregoing, we grant the writ of prohibition. The criminal complaint against Respondent Owens is reinstated and we remand this case to the magistrate court for further proceedings.

Writ Granted.

---

its right to prosecute Respondent Owens on the obstruction charge, the State has demonstrated that it is entitled to the requested writ of prohibition. *See* Syl. Pt. 5, *State v. Lewis*, in part, 188 W. Va. 85, 422 S.E.2d 807 ("The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction.").