**FILED**

**June 5, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-80

_____

STATE OF WEST VIRGINIA ex rel.
STATE OF WEST VIRGINIA,
Petitioner,

v.

THE HONORABLE JOSEPH BARKI,
JUDGE, CIRCUIT COURT OF OHIO COUNTY, and
SHAWN PETHTEL,
Respondents.

_____

Petition for Writ of Prohibition from the Circuit Court of Ohio County
Honorable Joseph Barki, Judge

WRIT OF PROHIBITION GRANTED

_____

Submitted: March 4, 2026
Filed: June 5, 2026

John B. McCuskey, Esq.                    John M. Jurco, Esq.
Attorney General                          John M. Jurco L.L.C.
William E. Longwell, Esq.                  St. Clairsville, Ohio
Assistant Attorney General                Counsel for Respondent
Charleston, West Virginia,
Counsel for Petitioner

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE BUNN concurs and reserves the right to file a separate Opinion.

JUSTICE TITUS concurs and reserves the right to file a separate Opinion.

**SYLLABUS BY THE COURT**

1.    "The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syllabus Point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017).

2.    "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors

i

are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.      "'In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.' Syllabus point 1, *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996)." Syl. Pt. 1, *State v. Tex B.S.*, 236 W. Va. 261, 778 S.E.2d 710 (2015).

WOOTON, Justice:

In this petition for extraordinary relief, the State of West Virginia ("the State"), seeks a writ to prohibit enforcement of an order entered by the Circuit Court of Ohio County on December 26, 2024, granting in part a motion filed by respondent Shawn Pethtel ("respondent Pethtel" or "Mr. Pethtel")[1] to correct an illegal sentence. *See* W. Va. R. Crim. P. 35(a), discussed *infra* at length.

Although acknowledging that the sentence was not illegal, the circuit court[2] nonetheless modified it by reducing two of three determinate ten-year terms of imprisonment to five-year terms and setting multiple other indeterminate terms of imprisonment to run concurrent with, rather than consecutive to, each other. *See infra*. As grounds for its action, the court "t[ook] into consideration the impact on [Mr. Pethtel's] life and our duty to support and believe in Due Process," and concluded that neither the length of the sentence nor the conduct of the sentencing judge was "acceptable."

---

[1] In previous opinions issued by this Court, *see infra*, and indeed throughout much of the decades-long history of this case, the respondent's name was erroneously spelled Pethel. The respondent's counsel has confirmed that the correct spelling of the respondent's name is Pethtel.

[2] The Honorable Ronald E. Wilson, former Judge of the Circuit Court of the First Judicial Circuit, issued the order that is the subject of the State's petition for extraordinary relief. Judge Wilson subsequently retired and the Honorable Joseph Barki has been assigned to this matter.

For the reasons that follow, we grant the writ of prohibition and remand this case to the circuit court with directions to reinstate the petitioner's original sentence.

## I. FACTS AND PROCEDURAL BACKGROUND

On September 13, 1999, Mr. Pethtel was indicted on twenty counts of third-degree sexual assault,[3] three counts of filming a minor engaged in sexually explicit conduct,[4] two counts of possession with intent to deliver a controlled substance,[5] one count of nighttime burglary,[6] five counts of conspiracy to commit a felony,[7] and one count of grand larceny.[8] The trial judge severed the drug-related charges, the nighttime burglary charge, the grand larceny charge, and four of the conspiracy charges, and on November 16, 2000, Mr. Pethtel went to trial on the remaining twenty-four sexually-based charges.

The two victims testified that when they were minors, they had sexual intercourse and/or oral sex with Mr. Pethtel on multiple occasions. The State further put on

---

[3] See W. Va. Code § 61-8B-5(a)(2).

[4] *See* W. Va. Code § 61-8C-2(b).

[5] *See* W. Va. Code § 60A-4-401.

[6] *See* W. Va. Code § 61-3-11(a).

[7] *See* W. Va. Code § 61-10-31.

[8] *See* W. Va. Code § 61-3-13(a).

evidence that Mr. Pethtel had, on at least three occasions, covertly filmed the minors in various sex acts. Finally, the State called witnesses who testified that Mr. Pethtel acted in concert with several friends in "pimping out" the victims to them and/or filming the victims in sexually explicit conduct. In his defense, Mr. Pethtel testified that he had engaged in oral sex on only one occasion with the first victim and had engaged in intercourse or oral sex on only two occasions with the other victim. He denied knowing, or even suspecting, that the victims were under eighteen years of age. He denied engaging in any sort of conspiracy to "pimp out" the victims or to set up his friends to engage in sex acts with them. He admitted covertly filming the victims in sexually explicit acts but again denied any knowledge that they were underage at the time of the filming.

On November 17, 2000, the jury convicted Mr. Pethtel on all twenty-four charges in the indictment. Thereafter, prior to sentencing, he and the State entered into a plea agreement as to the remaining charges in the indictment: he entered a plea of guilty to one count of possession with intent to deliver and one count of nighttime burglary, and the State dismissed the remaining six charges.

On December 5, 2000, the court held a sentencing hearing. The hearing was contentious and the sentencing judge's demeanor appears to have been somewhat combative not only toward the defense but also toward the State; in that latter regard, he castigated the prosecutor for his office's failure to follow through on earlier criminal

charges instituted against Mr. Pethtel, which in the judge's view constituted a failure to keep the community safe. Further, the judge questioned Mr. Pethtel's refusal to "give his side of the story" to the probation officer who was preparing a presentence report in the case,[9] and was also critical of his failure to respond to the standard question asked at sentencing, "do you have anything to say before sentence is pronounced?" More specifically, the judge stated:

> Mr. Pethel, I have reviewed your whole presentence investigation, considered the offenses, had the duty to sit through and watch the tapes that you made of the victims. I've sat here and listened to you refer to a young woman who was [sic] yet an adult as a little bitch that you pimp out out [sic] of your own mouth, saw the type of individual you are dealing with you throughout this Indictment, considered the version in the presentence investigation as well as your version of the crimes. I've considered the fact that *you've shown no remorse whatsoever and made no statement on your behalf.* I considered the police version, considered your lengthy criminal record even though you are only 24 years of age. I had the advantage of trying your friends who were involved in the criminal activity with you, considered your personal history, your education, your health, your employment, that you had no military service, your financial condition, the impact on the various victims of your criminal endeavors and the recommendation of the probation officer.
>
> I believe that if you were released, there is a substantial risk that you will offend again, that you need correctional treatment for a long period of time, that any probation or conditional discharge would depreciate the seriousness of the offenses you have committed.
>
> I've considered your drug and alcohol usage. I've considered the fact that you have failed to benefit from previous probation. I've

---

[9] Upon questioning by the judge, the probation officer stated that he had no problem with Mr. Pethtel's explanation that he was planning to appeal and thus did not want to say anything at that time. Mr. Pethtel's attorney confirmed that his client took this position on his advice.

4

considered the nature of the crimes you have committed, and your total lack of acceptance of responsibility.

I also believe that you are in the truest sense a sexual predator;[10] that you prey upon the weakest people in our society. When a young woman is without family, without direction, alone in the world, you take them – you took them in and committed crimes against them. If that wasn't bad enough, you then photographed them without them knowing it. You then took the trust of these people, these young girls, and made fun of them in front of your friends.

(Emphasis added.) The judge then sentenced Mr. Pethtel to the maximum punishment allowable by law: determinate prison terms of ten years on each of the three charges of filming a minor engaged in sexually explicit conduct; indeterminate terms of one-to-five years on each of the twenty third-degree sexual assault charges, the sexually-related conspiracy charge, and the drug-related charge; and an indeterminate term of one-to-fifteen years on the burglary charge. All sentences were set to run consecutively, for an effective sentence of 53 - 155 years in prison.

Prior to filing his direct appeal to this Court, Mr. Pethtel filed a motion to dismiss and a petition for writ of habeas corpus in the circuit court, both based on his assertion that the State violated the anti-shuttling provisions of the Interstate Agreement on Detainers Act ("IADA") when it failed to bring him to trial within 120 days of his initial return from Ohio, where he was serving time on an unrelated charge at the time of his

---

[10] Although Mr. Pethtel attacked this finding in the proceedings below, the circuit court did not modify the requirement that he remain on the sex offender registry for life and Mr. Pethtel has not filed a cross-appeal on this issue.

indictment in West Virginia, to West Virginia. *See* W. Va. Code § 62-14-1, Art. IV. Mr. Pethtel contended that this violation of the IADA entitled him to dismissal of the charges against him with prejudice. Neither the motion to dismiss nor the petition had yet been ruled upon by the circuit court when Mr. Pethtel filed his direct appeal on December 18, 2003.[11]

Mr. Pethtel's direct appeal was refused by this Court on April 1, 2004. Thereafter, the circuit court granted the previously filed petition for writ of habeas corpus, finding that the State had violated the IADA and that Mr. Pethtel was entitled to dismissal of all charges in the indictment. The State appealed, thus beginning a decade of litigation in both state and federal courts on the IADA issue – an issue which has now been fully and finally resolved against Mr. Pethtel.[12]

---

[11] The appeal was filed three years and thirteen days after Mr. Pethtel was sentenced. As we subsequently explained in *Pethel v. McBride [“Pethel I”]*, 219 W. Va. 578, 638 S.E.2d 727 (2006), the Court granted numerous extensions of time for Mr. Pethtel to appeal "due to problems in obtaining the relevant hearing and trial transcripts." *Id*. at 586 n.30, 638 S.E.2d at 735 n.30.

[12] In *Pethel I*, this Court reversed the circuit court's grant of habeas corpus relief, finding that

> Under West Virginia law, the provisions of the [IADA] do not rise to the level of constitutionally protected rights nor do they control a trial court's jurisdiction over criminal proceedings. They are procedural technicalities which do not affect a trial court's power. As such, they do not fall within the parameters of our habeas statute.

6

Separate and apart from his litigation of the IADA issue, on March 12, 2012, Mr. Pethtel filed a motion pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure alleging that his sentences on the three charges of filming a minor engaged in sexually explicit conduct were illegal because the statute under which he was convicted, West Virginia Code section 61-8C-2(b), did not prohibit capturing such images in digital files. The circuit court denied the motion, and this Court affirmed. *See State v. Pethel [Pethel V]*, No. 12-0838, 2013 WL 3242792 (W. Va. June 28, 2013) (memorandum decision), holding that

> Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). Rule 35(a) of the West Virginia Rules of Criminal Procedure provides that, "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence." Clear from this

219 W. Va. at 594, 638 S.E.2d at 743. Mr. Pethtel then filed a petition for writ of habeas corpus in the United States District Corut for the Northern District of West Virginia, which denied relief on the ground that a violation of the anti-shuttling provision of the IADA "does not constitute a fundamental defect entitling a petitioner to habeas relief under section 2254." *Pethtel v. McBride ["Pethtel II"]*, No. 1:07cv74, 2008 WL 4377143, at *2 (N.D.W. Va. Sept. 25, 2008) (citation omitted). The United States Court of Appeals for the Fourth Circuit affirmed. *Pethtel v. Ballard ["Pethtel III"]*, 617 F.3d 299 (4th Cir. 2010), *cert. denied*, 563 U.S. 976 (2011). Mr. Pethtel made a final attempt to breathe life into this now-dead issue by moving the circuit court for a hearing on the motion to dismiss he had filed on August 18, 2003, prior to filing his direct appeal. The circuit court denied relief and dismissed Mr. Pethtel's case from the court's active docket. This Court affirmed, noting that although Mr. Pethtel "has argued [the IADA issue] on innumerable occasions and in various pleadings in both state and federal courts[,]" the issue had been decided against him and could not be relitigated. *State v. Pethel [Pethel IV]*, No. 13-1139, 2014 WL 5311391 (W. Va. Oct. 17, 2014) (memorandum opinion).

language is the fact that the rule governs only illegal sentences or sentences imposed in an illegal manner. The nature of petitioner's argument is not that his is an illegal sentence or that his sentence was imposed in an illegal manner. Upon our review, the Court finds no error in the circuit court's denial of petitioner's motion Rule 35(a) motion because petitioner was properly sentenced pursuant to each statute.

*Pethel V*, 2013 WL 3242792, at *2.[13]

On April 16, 2024, Mr. Pethtel filed a second Rule 35(a) motion, this time claiming that his sentence was illegal because (1) the sentence was based on an impermissible factor, specifically, the petitioner's exercise of his "right to remain silent at sentencing rather than to allocate and speak on his own behalf in mitigation to the court," and/or bias on the part of the sentencing judge; (2) the circuit court did not follow the correct procedures in determining that the petitioner was a sexually violent predator, which in turn led to the court's imposition of the requirement that the petitioner remain on the sexual offender registry for life; (3) the presentence report was only transmitted to the petitioner one day prior to sentencing; and (4) the circuit court failed to credit at least twenty-three days of time served in West Virginia jails and failed to credit the time petitioner served in an Ohio jail after his indictment in West Virginia.

---

[13] On January 21, 2014, six months after *Pethel V* was decided, Mr. Pethtel filed a second petition for writ of habeas corpus in the circuit court, based on grounds that are not disclosed in the appendix record. On January 6, 2025, more than a decade later, he moved to dismiss the petition without prejudice. Again, the disposition of this motion, if any, is not disclosed in the appendix record.

The circuit court held a hearing on the motion and thereafter, on December 26, 2024, entered an order "Granting in Part [Mr. Pethtel's] Motion for Rule 35 Relief.[14] The court was harshly critical of both the sentencing judge's demeanor[15] and the sentence which was imposed, deeming it "not an acceptable sentence" because it was

> worse than the sentence imposed upon criminals who murder people and are given a life sentence with the possibility of mercy.[16] A criminal defendant who has committed serious crimes retains basic human dignity in our judicial system and should be treated as a human being in sentencing by a judge focusing on rehabilitation and addressing the root causes of his behavior rather than solely punishing him through a life sentence. . . . The Petitioner has now served 24 years in prison, and for that reason and all the other reasons stated in this Memorandum Order, the Court will GRANT the Petitioner's Rule 35 motion, in part, *by modifying the Petitioner's sentence*.

---

[14] The court's order consistently referred to "Rule 35" rather than to the more specific "Rule 35(a)" – a significant elision, as detailed *infra*.

[15] The court wrote that "[i]t appears that the Defense Counsel's argument was wasted on this judge[,]" that the judge was trying to "control crime in the future" by imposing the harshest possible sentence, that the judge's words were "an attack [on] another human being by making personal remarks about [his] character[,]" and that "the judge *may* have conducted his own investigation of the Petitioner and decided that the Petitioner was guilty of those prior criminal charges and should have been prosecuted." (Emphasis added).

[16] In his oral pronouncements, the court expanded on his sentencing philosophy, which takes the age of a defendant into consideration:

> I don't think you take a man's life away for crimes other than murder and where you do permanent damage to others. Certainly, in this case what he did and what he's convicted of is horrible. But he did that as what? A 24-year-old? He's no longer 24 years old.

(Emphasis added). Further, the court found that the third-degree sexual assault charges against Mr. Pethtel would have been classified, at an earlier time, as statutory rape, that "the young ladies who were the victims of the crimes voluntarily came back to [Mr. Pethtel's residence ten times[,]" and that the sexual crimes did not involve threats, battery, or the use of drugs, alcohol, or money as enticements.

Notwithstanding the above, the court acknowledged that

[a]ny of the allegations of misconduct by the judge alone would not mean that it was an illegal sentence. But, taking them together, *it is certainly a sentence that may not be illegal by itself*, but taking into consideration the impact on the Petitioner's life and our duty to support and believe in Due Process in the Constitution of the United States and in the Constitution of the State of West Virginia, it certainly is not an acceptable sentence nor is it acceptable conduct by a judge.

(Emphasis added).

The court then ordered the following "changes"[17] to the petitioner's sentence: as to the twenty counts of third-degree sexual assault, each carrying a sentence of 1-5 years, Counts 1, 2, 3, and 4 were to be served consecutively, with Counts 5 through 20 to be served concurrently with count 1; as to the three counts of filming a minor in a sexually explicit position, each carrying a sentence of 10 years, Count 21 was reduced to 5 years,

---

[17] The court used the word "changes" rather than the words "modifications" or "reductions," which latter terminology would more accurately describe the court's actions. *See* text *infra*.

Count 22, carrying a 10-year sentence, was to be served consecutively with Count 21, and Count 23 was reduced to 5 years and was to be served concurrently with Count 21; Count 30, the sexually-based conspiracy charge, carrying a sentence of 1-5 years, was to be served consecutively with Count 21; Count 26,[18] the burglary charge, carrying a sentence of 1-15 years, was to be served concurrently with Count 21; and Count 24, the marijuana conviction, carrying a sentence of 1-5 years, was to be served consecutively with Count 21.

In terms of securing Mr. Pethtel's immediate eligibility for parole, which based upon the court's oral and written pronouncements appears to have been its aim, the court's changes to his sentence reduced the number of years he would be required to serve before reaching parole eligibility from 30.5 years to 11 years.

The State of West Virginia thereupon filed the instant Petition for a Writ of Prohibition, framing the issue as follows:

> Did the circuit court exceed its authority by erroneously granting [the petitioner's] motion to correct an illegal sentence under Rule 35(a) of the West Virginia Rules of Criminal Procedure without finding that the sentence itself was illegal or imposed in an illegal manner, and despite this Court's prior ruling that [the petitioner's] sentence was lawful.

---

[18] The court's order erroneously refers to Count 26 as Count 24.

## II. STANDARD OF REVIEW

This case comes to us on the State's Petition for a Writ of Prohibition. We have held that

> [t]he State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

Syllabus Point 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), *superseded on other grounds by statute as recognized in State v. Butler*, 239 W. Va. 168, 179 n.27, 799 S.E.2d 718, 729 n.27 (2017). In determining whether the State is entitled to relief, we follow the well-established rule that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding[p]their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." *State ex rel. Cross v. Wilmoth*, 250 W. Va. 683, 685, 907 S.E.2d 805, 807 (2024) (citing Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953)).

Our standard of review in prohibition cases was set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III.   DISCUSSION

### 1. Illegality of the Sentence

The substantive issue before us is whether the circuit erred in granting the petitioner's motion for relief pursuant to Rule 35(a) of the West Virginia Rules of Criminal Procedure. In that regard, we have held that

> "'In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply

13

> a three-pronged standard of review. We review the decision on
> the Rule 35 motion under an abuse of discretion standard; the
> underlying facts are reviewed under a clearly erroneous
> standard; and questions of law and interpretations of statutes
> and rules are subject to a *de novo* review.' Syllabus point 1,
> *State v. Head,* 198 W. Va. 298, 480 S.E.2d 507 (1996)."

Syl. Pt. 1, *State v. Tex B.S.*, 236 W. Va. 261, 778 S.E.2d 710 (2015).

We begin by clearing away the legal debris – attacks on the rudeness and overall demeanor of the sentencing judge, the circuit court's suspicion that the judge may have carried out his own investigation of Mr. Pethtel's criminal history, the judge's lack of concern for rehabilitation, suggestions that Mr. Pethtel's sentence was unduly harsh given his young age and the circumstances presented, comparisons between the length of time Mr. Pethtel will have to serve versus the length of time a murderer will have to serve when his sentence carries a recommendation of mercy – all of which the circuit court concluded did not make Mr. Pethtel's sentence illegal. Further, to the extent that the above factors could be argued as support for a finding that the sentence was imposed in an illegal manner, i.e., by a judge who was trying to "send a message," the circuit court made no such finding.[19]

---

[19] *See infra*. It was decades too late to grant relief on the ground that Mr. Pethtel's sentence was imposed in an illegal manner.

14

Rule 35 of the West Virginia Rules of Criminal Procedure contains two very different provisions.

> (a) *Correction of sentence.* – The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence.
>
> (b) *Reduction of Sentence.* – A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

In the instant case, there can be no dispute that the time limit within which Mr. Pethtel could have sought a reduction of his sentence pursuant to Rule 35(b) expired more than two decades ago, as did the time limit within which he could have sought to correct the sentence pursuant to Rule 35(a) on the ground that it was imposed in an illegal manner. *See id*. Thus, the only possible relief available to Mr. Pethtel on April 16, 2024, when he filed his motion in the circuit court, was correction of an illegal sentence.

Although this Court has not precisely defined all possible contours of what constitutes an illegal sentence, it is generally understood to be "a penalty beyond the statutory limits or [imposed] for impermissible reasons[.]" *See State v. Hubbard*, No. 11-

15

0690, 2012 WL 2892350, at *2 (W. Va. Feb. 13, 2012) (memorandum decision) (citing Syl. Pt. 4, *State v. Goodnight,* 169 W. Va. 366, 287 S.E.2d 504 (1982)); *see also State v. York*, No. 23-468, 2025 WL 2614475, at *2 (W. Va. Sept. 10, 2025) (memorandum decision) ("Given the nature of the petitioner's arguments and her failure to assert that her sentence was illegally imposed, we regard her Rule 35(a) motion as asserting that her sentences are illegal. This is a difficult hurdle to surmount, as this Court has long held that '[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.'") (citation omitted).

In tacit acknowledgement of the above limitations imposed by Rule 35(a), as well as this Court's precedents strictly applying those limitations, the sole basis for Mr. Pethtel's claim that his sentence was illegal is his argument that the sentence was based on an impermissible factor or factors: his right to remain silent and/or his right to be sentenced by an unbiased judge.

We first consider the claim that Mr. Pethtel's sentence was based on the judge's finding that he expressed no remorse, which, it is alleged, violated his constitutional right to remain silent at his sentencing.[20] In this regard, Mr. Pethtel attempts to bring his case within the ambit of *Mitchell v. United States*, 526 U.S. 314 (1999), where the United States Supreme Court held that "[t]he concerns which mandate the rule against

---

[20] *See* U.S. Const., Amend. V; W. Va. Const. art. III, § 5.

16

negative inferences [based on a defendant's failure to testify] at a criminal trial apply with equal force at sentencing." *Id*. at 329. While this Court acknowledges the principle established in *Mitchell*, that a defendant's right to remain silent remains intact throughout the entirety of a criminal proceeding, including sentencing, we find that the facts in *Mitchell* are wholly distinguishable from the facts in the instant case. In *Mitchell*, the defendant entered a plea of guilty to engaging in a conspiracy to distribute cocaine. At her sentencing, she declined to admit to any specific quantity of drugs she had sold, taking the position that she should be sentenced on the basis of a codefendant's testimony which limited her participation in the conspiracy to three sales – the only documented sales – totaling two ounces. Instead, the sentencing judge relied on testimony from other codefendants that the defendant "had been a drug courier on a regular basis. Sales of 1½ to 2 ounces twice a week for a year and a half put her over the 5–kilogram threshold, thus mandating a minimum sentence of 10 years." *Id*. at 319. The record of the sentencing hearing showed that "[o]ne of the things" persuading the court to rely on the testimony of the codefendants was "the [defendant's] not testifying to the contrary." *Id*. On these facts, the Court held that "[b]y holding petitioner's silence against her *in determining the facts of the offense* at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Id*. at 330.

Here, in contrast, there is nothing in the record to suggest that the sentencing judge took Mr. Pethtel's failure to express remorse into account in determining any facts of his case. Rather, the facts had been established at trial, where the jury's verdict evidenced

17

its acceptance of the testimony of the victims and its disbelief of Mr. Pethtel's version of events. Further, in *Mitchell* the Court specifically declined to decide "[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in [the federal sentencing guidelines[,]" *id.*, which is the underlying assumption embedded in Mr. Pethtel's fifth amendment argument. And finally, in *Mitchell* the defendant raised the fifth amendment issue at the sentencing, and then again on direct appeal, not for the first time in a second Rule 35 motion filed more than twenty-three years after sentencing. *See* discussion *infra*.

Although taking into account a defendant's failure to express remorse at sentencing may, under some circumstances, constitute a violation of the defendant's right to remain silent, this Court's precedents demonstrate that such circumstances are limited. *See State v. Jones*, 215 W. Va. 666, 669, 610 S.E.2d 1, 4 (2004) (noting that "this Court has identified remorse or the lack thereof as a factor to be taken into account by a trial judge when sentencing a defendant."); *State v. Mann*, 205 W. Va. 303, 316, 518 S.E.2d 60, 73 (1999) (upholding sentence because "Mr. Mann has refused to express any remorse for crime. He has a prior drug related felony conviction and a conviction for assault (the original charge was attempted murder). . . .The presentence report on Mr. Mann was negative. The victim in this case was emotionally distraught and forced to change jobs. At the time of the offense, Mr. Mann was in his late thirty's [sic]."); *State v. Brown*, 177 W. Va. 633, 642, 355 S.E.2d 614, 623 (1987) (upholding sentence because "[t]he crime was a violent one and involved the use of the weapon. The appellant, who was over fifty years

old at the time of trial, was shown to have a long record of prior felony arrests and convictions in Pennsylvania, a fact which the court took into consideration in imposing sentence. The appellant expressed no remorse for the crimes which had been committed or sympathy for the victim[.]"); *State v. Buck,* 173 W.Va. 243, 246, 314 S.E.2d 406, 410 (1984) ("Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse.").

In Mr. Pethtel's case, the record shows that lack of remorse was just one of several dozen factors cited by the judge as bases for his decision to impose the maximum sentence allowed by law. Further, the record is devoid of any evidence that the judge improperly considered lack of remorse as a basis for enhancing the sentence or otherwise punishing Mr. Pethtel. In this regard, we are persuaded by the reasoning of the United States Court of Appeals for the Seventh Circuit in *Bergmann v. McCaughtry*, 65 F.3d 1372, 1379 (7th Cir. 1995), where the court examined the defendant's claim that the sentencing judge's reliance on lack of remorse as a factor in setting his sentence violated his right to remain silent:

> Bergmann argues next that the trial court improperly enhanced his sentence for exercising his fifth amendment right to remain silent when it considered his lack of remorse in setting the sentence. It is well established that a sentencing court may consider lack of remorse when imposing a sentence. *See United States v. Johnson,* 903 F.2d 1084, 1090 (7th Cir.1990) (and cases cited therein). Yet, as we recognized in

19

*Johnson,* sometimes it is difficult to distinguish between punishing a defendant for remaining silent and properly considering a defendant's failure to show remorse in setting a sentence. *Id.*

Even without consideration of the lack of remorse, the trial court had compelling reasons to believe that Bergmann was dangerous, including the fact that he carried guns with him whenever he left home, and the fact that a pre-sentence psychological examination revealed Bergmann to have anti-social and narcissistic personality disorders. The court appears to have properly exercised its discretion by weighing Bergmann's lack of a criminal record, his dangerous propensities, his need for rehabilitation and the gravity of the offense in setting its sentence. There is absolutely no evidence that the court enhanced Bergmann's sentence for exercising his right to remain silent. Therefore, we reject Bergmann's claim that the sentence violated his fifth amendment right to remain silent.

*Id*. at 1379 (emphasis added). Similarly, in *United States v. Barrington*, 648 F.3d 1178 (11th Cir. 2011), the court asked the following question of the defendant at sentencing: "Mr. Barrington, I sat through your trial. As you know, I was the trial judge. I heard all of the testimony, including yours. And I have yet to hear you say you did wrong. Do you still maintain that you did nothing wrong?" *Id*. at 1195. On appeal, the defendant claimed that he was punished for his refusal to answer the judge's question, in violation of his constitutional right to remain silent. The appellate court disagreed:

It is apparent that the district court's question, considered in light of the overwhelming evidence and Barrington's demeanor at trial, was simply an attempt to determine whether Barrington, having had time to reflect, was the least bit remorseful. He was not.

Further, Barrington's failure to accept responsibility was an appropriate consideration in the determination of his sentence. *[U.S. v. Rodriguez*, 959 F.2d 193, 197 (11th Cir.

20

1992)*]*. ("The sentencing court is justified in considering the defendant's conduct prior to, during, and after the trial to determine if the defendant has shown any remorse through his actions or statements."). His lack of remorse, coupled with his false trial testimony, obstructive conduct during the investigation, and what the district court described as his "arrogance and contempt for the law," certainly justified the sentence imposed, which we note was at the low-end of the Guidelines range.

*Id*. at 1197.

The second prong of Mr. Pethtel's argument, that the sentencing judge's comment that he had "made no statement on [his] behalf" violated his fifth amendment rights, requires little discussion. Given the fact that Mr. Pethtel testified at his trial, and thus had already presented his version of the operative facts of the case, it is readily apparent that the judge's statement referred to Mr. Pethtel's right under Rule 32(c)(3)(C) "to make a statement and to present any information in mitigation of sentence[,]" generally known as allocution.[21] Although it is well-settled in our jurisprudence that a sentencing judge must give a defendant the opportunity to allocute,[22] Mr. Pethtel cites to no cases from

---

[21] "'Ancient in law, allocution is both a rite and a right. It is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances. Furthermore, allocution 'has value in terms of maximizing the perceived equity of the process[.]'" *State v. Bruffey*, 207 W. Va. 267, 272, 531 S.E.2d 332, 337 (2000) (citations omitted), *overruled on other grounds by State v. McDonald*, 250 W. Va. 532, 906 S.E.2d 185 (2023).

[22] *See, e.g., State v. Kenneth Y.*, 217 W. Va. 167, 172, 617 S.E.2d 517, 522 (2005) ("In *State v. Brewster*, 213 W. Va. 227, 579 S.E.2d 715 (2003), this Court indicated that Rule 32(c)(3)(C) is part of this State's 'longstanding tradition' of conferring the right of allocution in criminal cases. 213 W. Va. at 229, 579 S.E.2d at 717. Thus, in syllabus point 6 of *State v. Berrill*, 196 W. Va. 578, 474 S.E.2d 508 (1996), this Court held: 'In the circuit

21

this or any other jurisdiction which prohibit a sentencing judge from taking into consideration the fact that a defendant declined to allocute when offered the opportunity to do so.

For the foregoing reasons, this Court concludes that under the facts and circumstances of this case, the sentencing judge's reliance on Mr. Pethtel's lack of remorse and his failure to allocute, two of a multitude of bases articulated by the judge as factors in his determination of the sentence to be imposed, did not violate Mr. Pethtel's constitutional right to remain silent.

We turn now to Mr. Pethtel's second argument: that his sentence was illegal because the sentencing judge was biased. *See, e.g.*, *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) ("Trial before 'an unbiased judge' is essential to due process.") (citations omitted).

Again, this argument requires little discussion, as it comes decades too late. Any claim that Mr. Pethtel's sentence was the result of judicial bias should have been raised on direct appeal, but it was not. Further, the issue of judicial bias could have been raised in the state and federal petitions for habeas corpus relief filed by Mr. Pethtel, but it was not.

---

and magistrate courts of this state, the judge or magistrate shall, *sua sponte,* afford to any person about to be sentenced the right of allocution before passing sentence.'") (citations omitted).

22

Finally, the issue could have been raised in Mr. Pethtel's post-trial motion to dismiss or in his first Rule 35(a) motion, but it was not. Throughout the entirety of this case, which now spans more than twenty-five years, Mr. Pethtel has been zealously represented by competent counsel.[23] On these facts, we have little trouble concluding that any claim of judicial bias has been waived. As we explained in syllabus point six, in part, *State v. Crabtree*, 198 W. Va. 620, 482 S.E.2d 605 (1996), "[w]aiver is the intentional relinquishment or abandonment of a known right. When there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law need not be determined."

And in any event, we note that the circuit court did not make a finding of bias on the part of the sentencing judge, and the court's order is devoid of any reference to Canon 2 of the Code of Judicial Conduct, "A Judge Shall Perform The Duties Of Judicial Office Impartially, Competently, And Diligently." Rather, the bulk of the court's comments related to its criticism that the judge's demeanor was not "patient, dignified, and courteous to the litigants." The circuit court's sole finding of fact and conclusion of law was that the sentencing judge violated Canon 3 of the Code of Judicial Conduct, "A Judge Shall Conduct The Judge's Personal And Extrajudicial Activities To Minimize The Risk Of Conflict With The Obligations Of Judicial Office," when he attempted to "control crime in the future" by imposing a harsh sentence that would, in common parlance, "send a

---

[23] Mr. Pethtel has never made a claim of ineffective assistance of counsel.

23

message." We find nothing in the language of Canon 3 to support the proposition that by expressing hope that a severe sentence imposed in any given case will deter future criminality, a judge impinges on the obligations of the executive branch of government and thus acts in a manner inconsistent with the obligations of the judicial branch.

In light of the foregoing, we conclude that the circuit court erred in granting, in part, Mr. Pethtel's motion for relief under Rule 35(a) of the West Virginia Rules of Criminal Procedure. More specifically, it was clear error for the court to grant relief under the rule where it did not make a finding that Mr. Pethtel's sentence was illegal and where, in fact, the sentence was not illegal.[24] Further, it was clear error for the court to grant reduction or modification of a legal sentence, relief available only under Rule 35(b), in a case where the time limits for such relief have passed. *See State ex rel. State v. Sims*, 239 W. Va. 764, 773, 806 S.E.2d 420, 429 (2017) ("[W]e hold that a circuit court does not have jurisdiction to rule upon the merits of a motion for reduction of a sentence under Rule 35(b) of the West Virginia Rules of Criminal Procedure when the motion is filed outside the 120-day filing period set out under that rule."). Additionally, the court committed clear error in granting relief under Rule 35(a) based on its determination of the "impact on [Mr. Pethtel's] life" the sentence will have, and/or on its observation that murderers may be eligible for parole after serving less time than Mr. Pethtel is required to serve. Finally, the court

---

[24] In light of our conclusion that Mr. Pethel's sentence was not illegal, we need not consider the State's argument that the question of illegality is res judicata as a result of this Court's decision in *Pethel V*, 2013 WL 3242792, at *2.

24

committed clear error in granting relief under rule 35(a) based upon "our duty to support and believe in Due Process," where the record is devoid of any facts that would support a finding – if indeed the circuit court ever made a specific finding, which it did not – that Mr. Pethtel's sentence violated his due process rights.

## Petition for Writ of Prohibition

Having determined that the circuit court committed clear legal error in granting Rule 35(a) relief to Mr. Pethtel in this case, and that the court's modification of Mr. Pethtel's sentence was thus an abuse of discretion under the applicable standard of review,[25] we turn to the question of whether this case satisfies some or all of the *Hoover* factors upon which this Court bases a determination of "whether to entertain and issue the writ of prohibition," *Hoover*, 199 W. Va. 14-15 , 483 S.E.2d 14-15, Syl. Pt. 4, in part.

The State contends that the case easily satisfies the first three prongs of the *Hoover* test: that the State has no other adequate means, such as direct appeal, to obtain the desired relief; that it will be damaged or prejudiced in a way that is not correctable on appeal; and that the lower tribunal's order is clearly erroneous as a matter of law.[26] *See id.* In response, Mr. Pethtel does not address the first two prongs of the test, which are clearly

---

[25] *See State v. Tex B.S.*, 236 W. Va. at 262, 778 S.E.2d at 711, Syl. Pt. 1.

[26] We need not address the State's argument that the fourth and fifth prongs of *Hoover* are met as well.

met in this case. *See, e.g., State ex rel. State v. Cuomo*, No. 25-16, 2026 WL 685354, at *6 (W. Va. Mar. 6, 2026) (memorandum opinion) (explaining the State's limited right of appeal). Instead, Mr. Pethtel focuses his argument solely on the third prong of the test, whether the circuit court's order was clearly erroneous. Specifically, Mr. Pethtel argues that the circuit court's order was, at worst, "a simple abuse of discretion" and thus not cognizable on a writ; that prohibition does not lie "after action has been had" because the writ is "a preventative rather than a corrective remedy"; and that the circuit court's decision was legally correct because the petitioner's original sentence was based on a constitutionally impermissible factor, his right to remain silent.

We agree with the State's analysis of the first three *Hoover* factors as applied in this case and reject Mt. Pethtel's arguments to the contrary. As discussed, this was not a case involving "a simple abuse of discretion"; to the contrary, we have concluded that the circuit court's grant of Rule 35(a) relief constituted clear legal error. We fail to understand Mr. Pethtel's argument that prohibition can only prevent, but not correct, judicial error; prevention of error is accomplished by means of a stay while appellate proceedings are ongoing. There is no case law to support the proposition that a writ of prohibition will not lie to prohibit enforcement of an order that contains clear legal error, which appears to be Mr. Pethtel's position. And finally, we have held that Mr. Pethtel's sentence was not illegal based on the sentencing court's consideration of his failure to express remorse and/or to allocute at the sentencing hearing, and that the sentence was not the result of judicial bias. To the contrary, the sentence was within statutory limits and not based on any

impermissible factor. *See Pethel V*, 2013 WL 3242792, at *2 (finding that Mr. Pethtel "was properly sentenced pursuant to each statute.").

In summary, because the circuit court exceeded its legitimate powers by granting, in part, a Rule 35(a) motion in a case where the underlying sentence was not illegal, and because the relief granted was available only under Rule 35(b), a remedy not available to Mr. Pethtel because the time limits for such relief have long since passed, this Court concludes that the circuit court's order is "clearly erroneous as a matter of law[.]" *Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4, in part. Accordingly, we hold that the State is entitled to the requested writ of prohibition pursuant to the first three *Hoover* factors.

## IV. Conclusion

For the foregoing reasons, the Writ of Prohibition is granted and this case is remanded to the Circuit Court of Ohio County with instructions for the court to reinstate Mr. Pethtel's original sentence entered on December 5, 2000.

Writ Granted; Case Remanded With Instructions.

27